No. 3--09--0983

Opinion filed March 11, 2011

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2011

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, McDonough County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06--CF--163 |
| DARRELL RIPPATOE, | ) ) | Honorable Edward R. Danner, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Presiding Justice Carter and Justice O'Brien concurred in the judgment and opinion.

_____

**OPINION**

The defendant, Darrell Rippatoe, appeals from an order of the circuit court of McDonough County denying his posttrial claims of ineffective assistance of counsel and denying his request for appointment of new counsel. This is the second time that the defendant's posttrial claim of ineffective assistance of trial counsel has been brought before this court. We previously

remanded this matter to the circuit court with directions to conduct an appropriate inquiry into whether new counsel should be appointed to present the defendant's claim of ineffective assistance of trial counsel. People v. Rippatoe, No. 3--07--0646 (2009) (unpublished order under Supreme Court Rule 23).

                              FACTS

A jury found the defendant guilty of home invasion (720 ILCS 5/12--11(a)(6) (West 2006)) and resisting or obstructing a peace officer (720 ILCS 5/31--1(a) (West 2006)). At the sentencing hearing, the defendant raised allegations of ineffective assistance of counsel. The trial judge, Judge Larry Heiser, did not address the defendant's claims of ineffective assistance of trial counsel. The court sentenced the defendant to 6½ years for home invasion and 364 days for resisting or obstructing a peace officer, the sentences to run concurrently.

In a pro se motion filed after sentencing, the defendant again raised allegations of ineffective assistance of counsel, asking the trial court to appoint another attorney to represent him. By this time, Judge Heiser had retired and Judge Edward Danner presided over defendant's motion. Judge Danner ruled that, based upon his review of the transcript of the prior proceedings, there was no merit to the defendant's ineffective

assistance claims.  The trial court then summarily denied the request to appoint new counsel.

The defendant appealed, maintaining that the trial court had failed to conduct an adequate inquiry into the factual basis of his pro se ineffective assistance claim.  See People v. Krankel, 102 Ill. 2d 181, 188 (1984).  This court reversed and remanded the matter to the trial court with directions to conduct an inquiry into the factual basis of the defendant's pro se posttrial claims in order to determine whether new counsel should be appointed to investigate those claims.  This court held that the defendant's claims of ineffective assistance could not be adequately addressed by merely reviewing the transcripts of the trial.

Following remand from this court, the defendant was transported from a Department of Corrections facility to the McDonough County courthouse where he was brought before Judge Danner with his legs shackled together and his arms shackled to a waist belt.  When asked to raise his right hand to be sworn, the defendant exhibited extreme difficulty in doing so due to the presence of the shackles.  After some effort to overcome the weight and encumbrance of the shackles, the defendant was able to raise his right hand sufficiently to swear an oath of truth.

After the defendant successfully raised his right hand, there was no further mention of the shackles, which remained on the defendant throughout the hearing.

The defendant testified that he told his defense counsel that an individual named Floyd Robinson could testify that the defendant had asked him to watch his two-year-old son, Ezekiel, while the defendant went to the alleged victim's house on the day in question. This testimony would have contradicted the testimony of the victim and the victim's adult son that the defendant had brought Ezekiel with him to the victim's house. The defendant alleged that counsel did not call Robinson to testify because of his race. The defendant also testified that his counsel had failed to ask a number of questions of the prosecution witnesses that he had requested be asked.

Attorney Douglas Miller, defendant's trial counsel, was called by the court to give testimony regarding his representation of the defendant at trial. Miller testified that the defendant had given him the name of Floyd Robinson as a potential witness. Miller thereafter arranged for Robinson to come to the courthouse during the defendant's trial. Outside the courtroom, Miller asked Robertson if, on the day in question, the defendant had taken Ezekiel to Robinson's house so that Robinson

4

could watch the child.  Robinson told Miller that he could not be sure that the defendant had gone to the victim's house while he was watching the child or if the defendant had picked the child up before going to see the victim.  Robinson claimed that he watched the child for approximately an hour that day, but he could not pinpoint the time of day when he was watching the child.  Miller recalled that both the victim and her son testified that Ezekiel was with the defendant when he invaded the victim's home and attempted to sexually assault her.

Although Miller indicated that he had no concerns about Robinson's credibility as a witness, he decided not to call Robinson to testify because he did not believe that Robinson's testimony would support a claim that the State's witnesses were not truthful when they testified that Ezekiel was with the defendant.  In view of the fact that Robinson could not establish what time of day he was watching the child, Miller surmised that it was possible the defendant had picked up the child prior to going to the victim's house.

Miller also testified that he decided against calling Robinson as a witness regarding Ezekiel because he believed there was a strategic advantage to the defendant in arguing that Ezekiel's presence would have made it highly unlikely that the

5

defendant would invade the victim's home and attempt to sexually assault her with his two-year-old son in tow. Miller testified that, as he recalled, he had in fact made this argument to the jury. Miller further testified that he did not consider Robinson's race in the decision not to call him as a defense witness.

Miller also testified that he did not use the questions that the defendant had asked him to pose to prosecution witnesses because they were argumentative and unnecessary to the defense. Miller further testified that he had been an assistant public defender for approximately 21 years and had tried 40 to 50 jury trials.

After Miller testified, the defendant was allowed to question Miller. The defendant asked two questions of Miller, both of which addressed a conversation between the defendant and Miller regarding Robinson's potential testimony.

At the conclusion of the testimony, the trial court sought argument from the Assistant State's Attorney, from Miller, who made note of the difficulty in arguing his own ineffectiveness, and from the defendant, who presented a brief argument on his own behalf. The trial court then ruled that the defendant's claims of ineffective assistance of counsel did not warrant appointment

6

of new counsel.  The court determined, based upon the testimony of the defendant and Miller, that there was no indication that Miller's performance had been deficient.  The court found that the substance of Robinson's proposed testimony would not have conclusively indicated that, at the time of the alleged home invasion, Ezekiel was with Robinson and not, as the victim had testified, with the defendant.  The court also found there was a strategic reason not to call Robinson as a witness, noting that it preserved Miller's ability to argue that the defendant would not have conducted a home invasion and sexual assault with his child present.  Moreover, the court found no support for the defendant's claim that Miller refused to call Robinson as a witness because of his race.

At one point in the proceedings, the trial judge commented that, in his previous personal experience with attorney Miller, the judge had never known Miller to be deficient in his performance.  The judge then recalled a case where Miller's representation of a particular defendant had, in the opinion of Judge Danner, effectively gotten a not guilty verdict for a defendant who was probably guilty.  Specifically, Judge Danner observed as follows:

"The court has, in over 30 years, has had [sic] experience of seeing wide ranges of ability of various counsel. This court did sit here in 2007 and had [sic] opportunity from time to time and occasion to occasion to observe Mr. Miller conduct court on behalf of his clients. The court's previous experience with Mr. Miller has been that he customarily was acquainted with his cases. Did legal research. Asked questions. Actually, I remember one case Mr. Miller conducted in front of me that I knew, as well as I was sitting on the bench, there had been a fellow that walked out of the door with a couple of packs of tobacco, but it could not be shown with the identification marks and I found the defendant not guilty, who was a habitual shoplifter over here at McDonough County, but Mr. Miller had done some excellent research talking about the act with specificity the items coming from a particular establishment. This court found Mr. Miller to be a

8

respectable member of the Bar, and officer of the Court, and to have always been candid with this court."

The trial judge then announced his finding that the defendant had failed to establish the need to appoint new counsel to further investigate the defendant's ineffective assistance of counsel claims.

ANALYSIS

On appeal, the defendant raises two claims of reversible error by the trial court: (1) permitting him to be in shackles throughout the hearing on his posttrial claim of ineffective assistance of counsel; and (2) referring to defense counsel's performance on other matters before the court in ruling that the defendant's allegations of ineffective assistance of counsel were insufficient to require appointment of new counsel.

As a preliminary matter, we note that neither of these two allegations of error was raised by objection during the hearing. Ordinarily, an issue is forfeited on appeal if it was not raised in the trial court through both a contemporaneous objection and a written motion. People v. Enoch, 122 Ill. 2d 176 (1988); People v. Allen, 222 Ill. 2d 340, 350-51 (2006). In order to overcome a

9

claim of forfeiture, we must determine whether the alleged errors can be reviewed under the so-called "plain-error doctrine." People v. Hillier, 237 Ill. 2d 539, 542 (2010). This doctrine proceeds in two steps. First, we must determine whether a clear and obvious error occurred. People v. Piatkowski, 225 Ill. 2d 551, 565 (2007). If we find that an error occurred, we must then determine whether the error was reversible. There are two ways to determine whether the error constituted reversible error. Reversible error occurs "when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." Piatkowski, 225 Ill. 2d at 565. In the first instance, the defendant must show that he was prejudiced by the error, i.e., the evidence was so closely balanced that the error threatened to ? 'tip the scales of justice' ? against him. Piatkowski, 225 Ill. 2d at 565 (quoting People v. Herron, 215 Ill. 2d 167, 186-87 (2005)). In the second instance, however, the defendant must show that the error was so

serious that it affected the fairness and integrity of the proceeding "regardless of the strength of the evidence." (Internal quotation marks omitted.)(Emphasis omitted.)  Id. at 565.

## 1. Shackling

It is well established that shackling a defendant in a criminal case is to be avoided unless absolutely necessary because such a drastic measure: (1) tends to prejudice the jury against the defendant, by negating the presumption of innocence; (2) restricts the defendant's ability to assist his counsel during trial; and (3) offends the dignity of the judicial process.  People v. Boose, 66 Ill. 2d 261, 265 (1977); People v. Urdiales, 225 Ill. 2d 354, 415 (2007).  Even in a posttrial proceeding, where there is no jury, any unnecessary restraint of a defendant is impermissible because it demeans both the defendant and the judicial process.  People v. Allen, 222 Ill. 2d 340, 346 (2006).  As such, it is error for a court to order or permit a defendant to be shackled at any point in a criminal proceeding unless the court has conducted a hearing in which it determines a manifest need for such restraints.  Boose, 66 Ill. 2d at 265-66; Allen, 222 Ill. 2d at 367.  There are several specific factors that must be considered by the trial court to

11

determine whether there is a manifest need for restraining a defendant during a court proceeding. Boose, 66 Ill. 2d at 266-67. Failure by the trial court to consider the Boose factors is clear and obvious error. Urdiales, 225 Ill. 2d at 415-16; Boose, 66 Ill. 2d at 267.

Here, the trial court erred in failing to conduct an inquiry into the need for the defendant to be shackled during the hearing on his posttrial motion. Having determined that clear and obvious error did, in fact, occur, we must determine whether the error constituted reversible error under the plain-error doctrine. Proceeding to the first test to determine whether a clear and obvious error is reversible, we note that the defendant has not argued that the evidence adduced at the hearing on his posttrial motion was closely balanced. Therefore, the first test does not apply. The defendant must, therefore, establish that his being shackled during the hearing on his pro se motion was so serious in nature as to have affected the fairness of the proceedings and challenged the integrity of the judicial process. The burden of persuasion on the question lies with the defendant. Piatkowski, 225 Ill. 2d at 565 (citing People v. Herron, 215 Ill. 2d 167, 187 (2005)).

12

The defendant argues that his participation at the hearing on his pro se motion while shackled, including giving testimony, questioning a witness and addressing the court in argument, was fundamentally unfair and clearly demeaned the dignity of the judicial process. The defendant points to his extreme difficulty in raising his right hand to take the oath of truth as a vivid example of how unfair and demeaning to the dignity of the proceedings the shackles were. He maintains that questioning witnesses, giving testimony, and presenting argument, all while his legs were shackled together and his arms were shackled to his waist, made a mockery of the proceedings. We agree.

The State maintains, however, that there is no indication that the trial judge was negatively influenced by the fact that the defendant was shackled. People v. Jackson, 205 Ill. 2d 247 (2001) (the law presumes a judge is impartial, even under strong provocation). Thus, the State further maintains, the defendant has failed to establish that the fairness of the proceedings was impaired or the integrity of the judicial process was impaired. We disagree. There can be no doubt that shackles impose physical burdens, pains, and restraints that tend to confuse and embarrass a defendant, burden his mental faculties and thereby materially

13

abridge and prejudicially affect his constitutional rights.  Deck v. Missouri, 544 U.S. 622, 631 (2005).

Where a defendant is forced to appear pro se, take an oath, testify, question witnesses, and present his arguments to the court all while shackled, without any consideration by the trial judge of the necessity for the shackles, the integrity of the judicial process is greatly demeaned.  There can be no doubt that the defendant's ability to act on his own behalf is severely diminished.  Moreover, there can be no doubt that the integrity and dignity of the judicial proceedings was demeaned where one of the participants had to conduct himself throughout the hearing while bound hand and feet for no apparent reason and without even an inquiry into a need to be restrained.  We find, therefore, that it was plain and reversible error for the trial judge to require the defendant to participate in these proceedings while in shackles.  The matter is reversed and remanded to the circuit court for further proceedings wherein the trial court will make a proper determination regarding the need to have the defendant participate in a hearing on his pro se motion while shackled, and if there is no manifest reason to do so, the defendant should be allowed to proceed in a manner that will not adversely affect the integrity of the judicial process.

## 2. Off-record Findings

Although our finding that the trial court committed reversible error in allowing the hearing to proceed while the defendant was shackled is sufficient to warrant remand for a new hearing, we find it necessary to address the defendant's argument that the trial judge erred in considering his off-record knowledge of defense counsel's performance in other cases in deciding the defendant's claim of ineffective assistance of counsel. Again, we note that the defendant forfeited the issue on appeal and we cannot review the matter unless it is deemed to be plain error. Hillier, 237 Ill. 2d at 544-45.

We find that the trial court's reliance upon its own observations of Miller's performance in other matters was clear error. See People v. Steidl, 177 Ill. 2d 239, 266 (1997) ("[d]eliberations of the court must necessarily be limited to the record before it"); People v. Dameron, 196 Ill. 2d 156, 171-72 (2001)(? ‹a determination made by the trial judge based upon a private investigation by the court or based upon private knowledge of the court, untested by cross-examination, or any of the rules of evidence constitutes a denial of due process of law' ")(quoting People v. Wallenberg, 24 Ill. 2d 350, 354 (1962)).

15

Of particular relevance in the instant matter is Steidl,

where our supreme court found a trial court engaged in reversible

error when it commented as follows:

> "'Petitioner's trial counsel has
>
> appeared before [this court] on numerous
>
> other occasions involving both criminal and
>
> civil cases and has effectively represented
>
> clients.  In a serious felony case tried
>
> before this Court, the Court recalls a
>
> defendant being found not guilty by a jury
>
> although the evidence against the defendant
>
> was substantial.  The result was probably
>
> attributable to counsel's tactics in
>
> presenting the case to the jury.
>
> The court is also aware of a homicide
>
> case tried by petitioner's trial counsel to a
>
> jury in Vermillion County, Illinois.  In that
>
> case, the defendant was found not guilty by
>
> jury in spite of eyewitness testimony.  A
>
> result, again, probably attributable to trial
>
> counsel's tactics.' "  Steidl, 177 Ill. 2d at
>
> 265.

16

We cannot help but note the striking similarity between Judge Danner's comments in the instant matter and the comments which constituted reversible error in Steidl.

Having found that the trial judge committed error in commenting on his personal knowledge of Miller's performance in other matters before him, we must still determine whether the error constituted reversible error.  We find that the defendant has not established that the trial judge's error affected the fairness of the proceedings or challenged the integrity of the judicial process.  Although a judge errs in considering facts outside the record, that error is harmless when a reviewing court can safely conclude that consideration of the facts outside the record did not affect the result.  People v. Jennings, 364 Ill. App. 3d 473 (2005).  Here, unlike in Steidl, where no evidentiary hearing took place, we may conclude that Judge Danner's musings and reminiscences about Miller's performance on other cases did not affect his ruling.

In Steidl, unlike in the instant matter, there was no evidentiary hearing, making the judge's personal knowledge of trial counsel's performance the only basis on the record for its determination that counsel provided competent representation. Steidl, 177 Ill. 2d at 265-66.  Here, the record includes the

17

testimony of both the defendant and his trial counsel. On review, we may determine from the complete record, absent Judge Danner's inappropriate musings, that Miller provided competent representation. The record supports a finding that the decision not to call Robinson as a witness was a matter of trial strategy. While it was clear and obvious error for the trial judge to consider his personal knowledge of Miller's performance on other matters, the defendant has failed to establish that he was prejudiced by the trial judge's error.

## CONCLUSION

The trial court erred at the hearing on the defendant's posttrial motion, both by allowing the defendant to remain shackled throughout the proceeding without a determination that shackles were necessary and by commenting upon the court's personal knowledge of defense counsel's performance in other matters before the court. While both actions by the trial court were erroneous, the defendant established reversible error only on the shackling issue. The matter is remanded to the circuit court for further proceedings wherein the trial court will make a proper determination regarding the need to have the defendant participate in a hearing on his pro se motion while shackled. If there is no manifest reason for the defendant to be shackled, a

18

new hearing shall be held on the defendant's claim of ineffective assistance wherein the trial court is instructed, once again, to conduct an inquiry into the factual basis of the defendant's pro se posttrial claims in order to determine whether new counsel should be appointed to investigate those claims.

Reversed and remanded with directions.