# Illinois Official Reports

## Appellate Court

---

### *People v. Jackson*, 2013 IL App (3d) 120205

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK A. JACKSON, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-12-0205 |
| Filed | November 26, 2013 |
| Rehearing denied | January 13, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's convictions for attempted first degree murder and aggravated battery, the erroneous admission of the opinion of a lay witness that defendant lied during a police interview was not shown to require reversal under either the first or second prong of the plain error test, defense counsel's failure to object to the lay witness's opinion testimony was a matter of trial strategy, defendant's sentence was not excessive, and, *inter alia*, any fees and fines imposed by the circuit clerk were vacated and the cause was remanded to the trial court with instructions to order the appropriate fines and fees with application of the $5-per-day credit. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 11-CF-380; the Hon. Timothy M. Lucas, Judge, presiding. |
| Judgment | Affirmed in part, vacated in part, and remanded with instruction. |

| Counsel on Appeal | Michael J. Pelletier and Kathleen A. Hill, both of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Jerry Brady, State's Attorney, of Peoria (Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion. |
| | Justices Carter and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1    After a jury trial, the defendant, Mark A. Jackson, was found guilty of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2010)) and aggravated battery (720 ILCS 5/12-4(a) (West 2010)). The trial court sentenced the defendant to 60 years' imprisonment. On appeal, the defendant argues: (1) he was denied a fair trial when the State elicited opinion testimony from a lay witness; (2) he received ineffective assistance of counsel because his trial attorney did not object to the opinion testimony; (3) his sentence was excessive; and (4) the trial court miscalculated certain fines and fees and did not apply his $5-per-day credit to his fines. We affirm in part, vacate in part, and remand with instruction.

¶ 2                                    FACTS
¶ 3    The defendant was charged by indictment with attempted first degree murder and aggravated battery. The case proceeded to a jury trial.

¶ 4    At trial, the victim, Eddie Singer, testified that on the morning of April 22, 2011, he arrived at Neal Auto Parts (Neal), his place of employment, around 6 a.m. Shortly after his arrival, the defendant appeared. The defendant told the victim that he no longer worked at Neal and he was retrieving some tools. The victim followed the defendant to the back of the store and took pictures of the items the defendant loaded into his truck. The victim followed the defendant to the locker area where the defendant retrieved some towels and returned to his truck. The defendant shook the victim's hand and asked "What's the matter, Ed?" The victim said he had a sore throat, and the defendant responded "[o]h, fuck you" and stabbed the victim in the chest.

¶ 5    The victim ran outside of the building, and the defendant followed. The defendant pushed the victim to the ground and repeatedly stabbed the victim in the stomach. The victim pushed

the defendant off him and ran toward the front of the property to get help. The defendant caught the victim, knocked him down, and stabbed him again. In the resulting struggle, the victim suffered defensive wounds to his face and left arm. The victim eventually broke free of the defendant and moved onto his knees. However, the defendant returned and stabbed the victim a few more times. The defendant said "[d]on't fight it, Ed, just let it happen, don't fight it, just let it happen." The victim collapsed to the ground, and the defendant shoved him out of the way and fled the property.

¶ 6 After the defendant left, the victim made his way into the building and called 911. While on the phone, the victim collapsed onto the floor. Shortly thereafter, Miles Thum and a sheriff's deputy came into the building and found the victim lying on the floor. The victim told Thum that the defendant had stabbed him.

¶ 7 On cross-examination, the victim said that he followed the defendant around the building because he was afraid that the defendant would take the other employees' tools. The victim said that he was not angry with the defendant and denied carrying a knife or attacking the defendant.

¶ 8 Thum testified that he was employed at Neal on April 22, 2011. On that date, Thum arrived to work early and noticed the defendant's vehicle exit the back of the property at a high rate of speed. As Thum approached the door, he was met by a sheriff's deputy. Thum and the deputy proceeded inside the building and found the victim, covered in blood, slumped behind the counter, with a telephone dangling over his shoulder. The deputy directed Thum to find some gauze to place over the victim's wounds until the paramedics arrived.

¶ 9 Peoria County sheriff's deputy Aaron Witt responded to the victim's 911 call around 6:30 a.m. At the scene, Witt saw Thum get out of his vehicle and walk toward the entrance of the building. Witt approached Thum, asked him a few questions, and followed a blood trail into the building. Inside the building, Witt found the victim slumped over behind a counter. Thum retrieved some gauze that Witt applied to the victim's injury.

¶ 10 Crime scene technician Matthew Maher testified that he documented the scene. Based on the condition of the scene, Maher believed that a struggle had taken place, but he could not say who had initiated it.

¶ 11 The parties stipulated, in part, that deoxyribonucleic acid (DNA) testing of the blood recovered from the victim's clothes contained a mixture of the victim's and the defendant's blood.

¶ 12 Detective Dave Hoyle testified that the defendant turned himself in to the police later in the day of the incident. Hoyle interviewed the defendant and noted that "[i]nitially [the defendant] lied." Hoyle was unable to recall the defendant's exact lie, but remembered confronting the defendant about the lie.

¶ 13 The defendant told Hoyle that he went to Neal to steal catalytic converters to sell for "drug money." The defendant arrived at an early hour knowing that the victim would be working by himself. At Neal, the victim followed the defendant around, and the defendant "snapped" and stabbed the victim. The victim ran outside the building, and the defendant chased the victim, got into a struggle, and stabbed the victim several more times.

¶ 14    The defendant received a cut on his hand during the altercation. However, he did not recall how he received the cut and did not say that the victim had attacked him. The defendant also did not remember how many times he stabbed the victim.

¶ 15    On cross-examination, defense counsel asked Hoyle if he could recall the lie that the defendant originally told him, and the following exchange took place:

"Q. All right. Now, you indicate this, you testified originally that when he spoke with you he lied to you, accurate?

A. Yes.

Q. But you can't recall–you can't recall as you sit there to tell us what this lie is, can you?

A. I might. I'm not sure if I wrote down the exact lie in my report or not but I don't remember what the lie was.

Q. Okay. So you acknowledge that, just like any of us at times, you have problems with recollection just like I do sometimes?

A. Yes."

Hoyle also stated that a second officer was not present for the interview. The defendant's statement was not reduced to writing, nor was it video or audio recorded.

¶ 16    The jury found the defendant guilty of attempted first degree murder and aggravated battery. At the sentencing hearing, the trial court noted the following factors in aggravation: (1) the defendant's conduct threatened serious harm; (2) the defendant was convicted of seven prior serious felonies, including one conviction for murder; and (3) there was a need to deter others from committing similar crimes of violence, considering that the victim's life was nearly ended for "a fist full of crack worth $400." In mitigation, the court noted that rehabilitation was unlikely, given the defendant's prior record and his age of 51. The court sentenced the defendant to an extended term of 60 years of imprisonment and ordered the defendant to pay "cost[s]."

¶ 17                                          ANALYSIS
¶ 18                                    I. Opinion Testimony
¶ 19    The defendant argues that he was denied a fair trial because the State elicited opinion testimony from Hoyle that the defendant initially lied during his police interview. The defendant admits that he did not preserve this issue for review, but contends that the error is reversible plain error.

¶ 20    We agree that the defendant failed to preserve this issue for review. To overcome this forfeiture, we must determine whether the alleged error can be reviewed under the plain error doctrine. *People v. Rippatoe*, 408 Ill. App. 3d 1061 (2011). First, we must determine whether a clear and obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551 (2007). If an error occurred, we must then determine whether the error was reversible. *Rippatoe*, 408 Ill. App. 3d 1061. Reversible error occurs when: (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the

error; or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Piatkowski*, 225 Ill. 2d 551.

¶ 21 Generally, a lay witness may not offer an opinion as to the meaning of another's out-of-court statement. *People v. Williams*, 264 Ill. App. 3d 278 (1993). It is within the province of the jury to interpret such statements. *Id.* A lay witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Ill. R. Evid. 701 (eff. Jan. 1, 2011).

¶ 22 In the instant case, Hoyle's characterization of the defendant's initial statement as a lie was opinion testimony. This testimony removed from the jury's consideration the veracity of the defendant's statement to the police. As this testimony was rendered by a lay witness, it was erroneously admitted.

¶ 23 The defendant, however, has not demonstrated that the evidence was so closely balanced that the error requires reversal. Plain error analysis under the first prong is similar to an analysis for ineffective assistance of counsel in that the defendant must show that he suffered prejudice as a result of the error. *People v. White*, 2011 IL 109689. "In determining whether the closely balanced prong has been met, we must make a 'commonsense assessment' of the evidence [citation] within the context of the circumstances of the individual case." *People v. Adams*, 2012 IL 111168, ¶ 22 (quoting *White*, 2011 IL 109689, ¶ 139).

¶ 24 Here, the defendant cannot show that he suffered prejudice as a result of the error. First, the evidence was not so close that the error altered the outcome of the proceedings. The victim testified that the defendant attacked and repeatedly stabbed him. Hoyle's testimony regarding the defendant's interview corroborated the victim's version of events. Although Hoyle's opinion testimony arguably bolstered the State's case, the defendant did not demonstrate that it altered the outcome. In fact, the testimony may have damaged the State's case because defense counsel attempted to use it on cross-examination to impeach Hoyle's credibility.

¶ 25 The defendant has also failed to demonstrate that the error requires reversal under the second prong of the plain error test, *i.e.*, whether the error was so serious to deny the defendant a fair trial. Our supreme court has equated the second prong of the plain error test with structural error such that automatic reversal is only warranted when the error renders a defendant's trial fundamentally unfair or unreliable. *People v. Thompson*, 238 Ill. 2d 598 (2010). In *Thompson*, our supreme court recognized a very limited class of structural errors, including: the complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction. *Id.* The error at issue here does not rise to the level of those errors. Thus, we do not find that the admission of lay opinion testimony in the instant case rendered the defendant's trial fundamentally unfair or unreliable. Consequently, the defendant has not demonstrated that the error requires reversal under either prong of the plain error test.

## II. Ineffective Assistance of Counsel

¶ 27      The defendant argues, in the alternative, that he received ineffective assistance of counsel because defense counsel did not object to the State's elicitation of lay opinion testimony.

¶ 28      To prevail on an ineffective assistance of counsel claim, the defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced the defendant as to deny him a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984). To establish the deficient performance prong, the defendant must overcome the presumption that counsel's inaction was the result of trial strategy. *People v. Perry*, 224 Ill. 2d 312 (2007). Additionally, the defendant must establish that, except for counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. 668.

¶ 29      The defendant has not shown that defense counsel's performance was deficient. Defense counsel's decision not to object to Hoyle's opinion testimony was arguably strategic. As we have previously noted, defense counsel used Hoyle's lack of memory for impeachment. As a result, the defendant received effective assistance of counsel.

## III. Sentence

¶ 31      The defendant argues that his sentence was excessive. The defendant contends that the trial court failed to consider the context of his criminal background and his history of mental problems. The defendant also argues that the court's statement that the victim's life was nearly ended for "a fist full of crack worth $400" was without a basis in evidence.

¶ 32      "The Illinois Constitution requires penalties to be determined 'both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' " *People v. Raymond*, 404 Ill. App. 3d 1028, 1069 (2010) (quoting Ill. Const. 1970, art. I, § 11). Balancing these purposes requires the trial court to carefully consider all of the factors in aggravation and mitigation, including, *inter alia*, whether the defendant's conduct caused or threatened serious harm, prior history of delinquency or criminal activity, deterrence, age, mentality, and nature and circumstances of the crime. See 730 ILCS 5/5-5-3.2 (West 2010); see also *People v. Center*, 198 Ill. App. 3d 1025 (1990).

¶ 33      A trial court has wide discretion in sentencing a criminal defendant. *People v. Sweeney*, 2012 IL App (3d) 100781. We review the trial court's sentencing decision for an abuse of discretion. *Id.* A sentence within the statutory range will not be considered excessive unless it varies greatly with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Brazziel*, 406 Ill. App. 3d 412 (2010).

¶ 34      The defendant was convicted and sentenced for attempted first degree murder, a Class X felony. 720 ILCS 5/8-4(c) (West 2010). A Class X felony conviction carries a sentencing range of 6 to 30 years' imprisonment and an extended-term sentencing range of 30 to 60 years' imprisonment. 730 ILCS 5/5-4.5-25(a), 5-8-2 (West 2010). The defendant was eligible for an extended-term sentence due to his 1988 murder conviction, which he finished serving on July

23, 2007. 730 ILCS 5/5-5-3.2(b)(1) (West 2010). Therefore, the defendant's sentence was within the applicable sentencing range.

¶ 35 The defendant contends the trial court failed to consider the context of his criminal background or his history of mental problems. At sentencing, the trial court expressly considered the trial evidence, the defendant's presentence investigation report (PSI), and the factors in aggravation and mitigation. In aggravation, the trial court noted the following: that the defendant was convicted of seven prior felonies, including murder and aggravated battery; his conduct nearly resulted in the victim's death; and a lengthy sentence was necessary to deter others from committing similar crimes. Although the trial court did not discuss on the record the defendant's mental health issues, the defendant's PSI documented his 1981 hospitalization for suicidal intentions, a 1982 opinion from the Department of Corrections that he was mentally unstable, and his 1988 failed suicide attempt. The PSI did not report any recent mental health issues, and the defendant stated that he was in fine mental health. We find no error in the court's consideration of the defendant's mental condition and related factors.

¶ 36 The defendant further argues that the court cited facts that were not in evidence in support of its sentence. Specifically, the defendant argues that the court should not have considered that the victim nearly lost his life for "a fist full of crack." However, the trial court's statement regarding crack cocaine was supported by the defendant's statement to the police, which was documented in his PSI. According to this statement, the defendant stole automotive parts from Neal, sold the catalytic converters for $440, and used the proceeds to purchase crack cocaine. The defendant then smoked the crack cocaine for the remainder of the day before he turned himself in to the police. Thus, the trial court's comment indicated that it had reviewed the defendant's PSI, and its comments were based on it.

¶ 37 Overall, the trial court did not abuse its discretion. The defendant had a serious criminal history, including a prior conviction for murder, which warranted a lengthy sentence. We hold that the defendant's sentence was not excessive.

¶ 38                                              IV. Fines and Fees

¶ 39 The defendant argues that his State's Attorney's fee should be reduced from $150 to $70. The defendant notes that the court did not enter an order authorizing a trial *per diem* as part of this fee, but the State had secured two convictions and attended a preliminary examination. Thus, defendant contends that the State is entitled to $70 in State's Attorney's fees. See 55 ILCS 5/4-2002(a) (West 2010). Additionally, defendant argues that he is entitled to a $24.75 offset of his State Police services fines and drug court fine due to application of his $5-per-day credit. See *People v. Millsap*, 2012 IL App (4th) 110668; see also *People v. Unander*, 404 Ill. App. 3d 884 (2010). The State responds that the State's Attorney's fee was mandated by statute, but admits that the trial *per diem* cannot be imposed without an order of the court. The State further notes that the circuit clerk imposed fines without order of the court. Therefore, the State asks this court to vacate the improper State's Attorney's fee, along with the DNA analysis fee and any fines assessed by the trial court, and remand the cause with instruction for the trial court to specifically order the proper State's Attorney's fee, applicable fines, and application of the defendant's $5-per-day credit.

¶ 40                                     A. State's Attorney's Fee

¶ 41       First, we hold that defendant's State's Attorney's fee was improperly calculated. Section 4-2002 of the Counties Code states "State's attorneys *shall* be entitled to \*\*\* fees" for preliminary examinations, days employed in a trial, convictions secured, and various other proceedings. (Emphasis added.) 55 ILCS 5/4-2002(a) (West 2010). Generally, the use of the term "shall" by the legislature is intended to express a mandatory reading. *People v. Reed*, 177 Ill. 2d 389 (1997). Therefore, based on the plain language of the statute, the State's Attorney's fee was mandatory. However, the statute also mandates that if a *per diem* fee is assessed, the trial court must "make an order specifying the number of days for which a per diem shall be allowed." 55 ILCS 5/4-2002(a) (West 2010). Absent such an order, the *per diem* allowance may not be assessed. *People v. Nicholls*, 71 Ill. 2d 166 (1978). Here, the clerk imposed a $150 State's Attorney fee. The record does not contain a breakdown of this fee, and we are unable to determine what elements of the statute supported this sum. Moreover, we note that the court did not enter an order specifying the number of days for which a trial *per diem* shall be allowed. As a result, we vacate the $150 State's Attorney's fee and remand the cause to the trial court to enter an order imposing the appropriate State's Attorney's fee.

¶ 42                                     B. DNA Analysis Fee

¶ 43       Second, a DNA analysis fee was improperly assessed. Section 5-4-3 of the Unified Code of Corrections requires any person found guilty of a felony class offense to submit to a DNA analysis and pay a $200 fee except when an individual's DNA is already registered as a result of a prior felony conviction. 730 ILCS 5/5-4-3(a) (West 2010); *People v. Marshall*, 242 Ill. 2d 285 (2011). The defendant's PSI indicates that his DNA was registered before sentencing. Therefore, we vacate the defendant's DNA analysis fee.

¶ 44                                  C. Remaining Fine Issues

¶ 45       Finally, we vacate any fines and fees imposed by the circuit clerk. "The clerk of a court is a nonjudicial member of the court and, as such, has no power to impose sentences or levy fines \*\*\*." *People v. Scott*, 152 Ill. App. 3d 868, 873 (1987). The record shows that the court ordered the defendant to pay only "costs." A review of the payment sheet indicates that various coded fines and fees were imposed by the clerk. The record does not contain an explanation for the coded assessments, although, the defendant provided a key in his appellant's brief that provides some unofficial guidance. As a result, we are unable to confidently determine which of the costs were fines, imposed without authority, and which were fees. Therefore, we vacate all of the defendant's fines and fees and remand the cause to the trial court with instruction to specifically order the appropriate fines, fees, and application of the defendant's $5-per-day credit. See 725 ILCS 5/110-14(a) (West 2010); see also *People v. Williams*, 2011 IL App (3d) 100142.

¶ 46                                CONCLUSION

¶ 47        For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed in part, vacated in part, and remanded with instruction.

¶ 48        Affirmed in part, vacated in part, and remanded with instruction.