2023 IL App (1st) 200376-U

SIXTH DIVISION
January 27, 2023

No. 1-20-0376

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 18694 |
| | ) | |
| HERBERT PITTS, | ) | Honorable |
| | ) | Joan Margaret O'Brien, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justice Tailor concurred in the judgment.
Justice C.A. Walker specially concurred.

**ORDER**

¶ 1   *Held*:   Any error on the part of the circuit court in denying defendant's request to have his shackles removed for argument on his motion to present newly discovered evidence was harmless where, as presented, the motion simply could not have resulted in the relief sought.

¶ 2   Defendant Herbert Pitts was convicted of aggravated battery and sentenced to ten years in prison. While his direct appeal was pending, Mr. Pitts filed a *pro se* motion for a new trial based on newly discovered evidence. Mr. Pitts cited as his only legal support a federal rule of criminal

procedure allowing the filing of such a motion within three years of trial. The circuit court explained to Mr. Pitts that, under Illinois law, the time had passed for his motion to be considered a timely posttrial motion, that although she would consider the authority he cited, it likely had no application in state court, and that the argument he was making was one typically made in a postconviction petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)). She explained to him that, if she were to recharacterize his motion as a postconviction petition, any other postconviction petition he filed would only be considered under the standards for filing a successive postconviction petition and asked him if he wanted her to do so.  Mr. Pitts was adamant that he did not. The court agreed to consider the motion "as written," and it was set for argument. On the day of the argument, Mr. Pitts was brought into court shackled. He asked for the shackles to be removed so that he could more comfortably present his exhibits, and that request was denied. When Mr. Pitts had presented his exhibits and both sides had argued their respective positions, the court denied Mr. Pitts's motion as having no basis in applicable law.

¶ 3     On appeal, Mr. Pitts argues that without a hearing and a finding of manifest necessity, the circuit court's refusal to remove his shackles deprived him of due process. He asks us to remand this matter to the circuit court for further proceedings. We need not decide whether it was error for the circuit court to deny Mr. Pitts's request to be unshackled in this instance. We agree with the State that to the extent there was error here, we must view it as harmless. Mr. Pitts's motion, as presented, provided no avenue for the relief he sought, and remanding for a new hearing on that motion would be meaningless.

¶ 4                                   I. BACKGROUND

¶ 5     Following a two-day jury trial in May 2017, *pro se* defendant Herbert Pitts was convicted of aggravated battery with a deadly weapon (720 ILCS 5/12-3.05(f)(1) (West 2016)) and

aggravated battery on a public way (720 ILCS 5/12-3.05(c) (West 2016)). The State's evidence at trial established that the victim, Patrick McGee, had borrowed money from friends to start his own business, including a $25 loan from Mr. Pitts that Mr. McGee promised to repay in installments. Following repeated demands for repayment, on November 15, 2016, Mr. Pitts knocked on Mr. McGee's door at 1:30 a.m. and demanded that Mr. McGee's girlfriend, who answered the door, wake him up. Mr. McGee came downstairs and saw Mr. Pitts heading down the street with Mr. McGee's bicycle. He confronted Mr. Pitts on the sidewalk, warned him not to knock on his door so early in the morning, and turned to walk home, at which point Mr. Pitts cut his neck. The police arrested Mr. Pitts and, after initially refusing an ambulance, Mr. McGee later had a neighbor drive him to the hospital for stitches. Mr. Pitts presented no evidence.

¶ 6     The trial court sentenced Mr. Pitts on June 28, 2017, to two concurrent 10-year terms of imprisonment. On direct appeal, this court vacated two of Mr. Pitts's earlier convictions for aggravated unlawful use of a weapon (AUUW) and unlawful use of a weapon by a felon (following our supreme court's holdings in *People v. Aguilar*, 2013 IL 112116, *People v. Burns*, 2015 IL 117387, and *In re N.G.*, 2018 IL 121939, that a provision of the AUUW statute was facially unconstitutional and that void convictions are subject to attack at any time), vacated his conviction for aggravated battery on a public way under the one-act, one-crime rule, and remanded for resentencing on the charge of aggravated battery with a deadly weapon. *People v. Pitts*, No. 1-17-1836 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 7     While his direct appeal was still pending, Mr. Pitts made two additional filings in the circuit court. On January 23, 2019, he filed a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)), in which he argued that the aggravated battery statute he was convicted under was unconstitutional. The circuit court denied

that petition. And on June 25, 2019, Mr. Pitts filed the *pro se* motion that is the subject of this appeal, which he styled as a motion "For New Trial—Newly Discovered Evidence [Fed. R. Crim. P. 33]." As the title suggests, Mr. Pitts cited as his only support a rule governing postconviction proceedings in federal courts. He attached three affidavits that he maintained established his innocence: one from himself, one from his mother, and one from Rosetta Crawford, the neighbor who drove Mr. McGee to the hospital.

¶ 8     In his own affidavit, Mr. Pitts stated that Mr. McGee was the one who brought a knife to their encounter and insisted that Mr. McGee was on drugs at the time and threatening to cut Mr. Pitts when he accidentally cut himself.

¶ 9     Deborah Johnson, Mr. Pitts's mother, stated in her affidavit that three days after her son's encounter with Mr. McGee, Mr. McGee sought her out and told her that on the night in question, he had left his house with a hunting knife intending to do her son bodily harm, that he knew he owed her son money, and that he did not intend to press charges.

¶ 10     Mr. Pitts maintained in his motion that Ms. Crawford contacted him after his trial to tell him she heard Mr. McGee admit that he had accidentally cut himself but intended to blame Mr. Pitts for his injury to avoid having to pay him back the money he owed him. Ms. Crawford made no mention of this in her two-sentence affidavit, however. She stated only that while she took Mr. McGee to the hospital, she "was not there when the accident took place."

¶ 11     At the State's suggestion, Mr. Pitts was brought to court on September 13, 2019, so that the circuit court judge could question him regarding the nature of his motion. The judge pointed out to Mr. Pitts that the rule he relied on was a federal rule of criminal procedure, that this was state court, and that more than thirty days had passed since his trial. Noting that the language Mr. Pitts had used was language often seen in postconviction petitions, she asked him if he wanted her

to recharacterize the filing as a postconviction petition. The judge admonished Mr. Pitts, pursuant to *People v. Shellstrom*, 216 Ill. 2d 45, 57 (2005), that only one postconviction petition is contemplated by the Post-Conviction Act, that if the motion were to be recharacterized as such, the court would review it and decide within 90 days whether to dismiss it or advance it to the second stage, that there were restrictions on the filing of subsequent postconviction petitions, and that he had the right to withdraw his motion or amend it before it was recharacterized. The following exchange then took place:

> "THE COURT: Okay. So what would you like to do? I mean, I am happy to read that federal rule you want me to read, but I can tell you right now, I don't believe it applies to state court. I will read it and check it. How would you like me to treat this today?
>
> DEFENDANT PITTS: Actually, I would like to be—I would like you to treat it as written up and hopefully you can look into it. I don't want to recharacterize this in Post-Conviction because I don't want no further delays if it as to delay [*sic*] with my appeal because my appeal already been three years."
>
> * * *
>
> THE COURT: Okay. So that's fine. You are adamant that you don't want me to do that. I will take a look at this. You said you were not really sure why you were brought here today. I will bring you back one other time so you can be prepared to argue your motion.
>
> DEFENDANT PITTS: Okay."

The judge concluded by explaining to Mr. Pitts that at the first stage of postconviction proceedings, the State is not involved, but that if he was "absolutely sure [he] didn't want to do that," the State could "be involved in this then and [could] file something." Mr. Pitts said he understood.

¶ 12   The State then moved to dismiss Mr. Pitts's motion under sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2018)), on the basis that he had failed to cite any applicable legal authority and Illinois courts lack jurisdiction to enforce federal rules of procedure. Mr. Pitts filed a response, in which he insisted that the federal rules of procedure applied. He also argued for the first time that the State had withheld evidence from him during discovery.

¶ 13   The circuit court held a hearing on Mr. Pitts's motion on January 31, 2020. Mr. Pitts repeatedly asked the court to "preserve for the record" that he "would like enough time to argue those motions," referring, apparently, to the exhibits he had filed, and the court repeatedly told him to go ahead, that this was his time to make any arguments he had. The following exchange then took place:

"THE DEFENDANT: Can I get my handcuffs removed please?

THE COURT: No. You can argue. Do you need to open something? You can take them out, the deputy can help you take them out, which you've been doing on your own.

THE DEFENDANT: It is very uncomfortable, though. Being my own attorney, I should have been able to have the right to be without handcuffs.

THE COURT: Just argue your case.

THE DEFENDANT: Actually, I will, as soon as you're ready.

THE COURT: I said go ahead and argue, it is time to do it."

¶ 14   Mr. Pitts then proceeded to make his arguments. In response to the State's argument that the court had no jurisdiction to entertain a motion brought pursuant to a federal rule of procedure, Mr. Pitts insisted that what he had filed was not "a federal motion" but rather "a state motion," that was merely "agreeable to" and "in conformity with" the federal rule he had cited.

¶ 15   When Mr. Pitts had concluded, the State reiterated its position, and the court ruled as

follows:

> "THE COURT: All right. Mr. Pitts, as I said earlier, I had read all your filings, including the exhibits, and also on a previous court date after I had read your original filings, I had requested if you wanted me to recharacterize your motion as a post-conviction petition, and you said you did not want me to do that. *** you chose to file this under the Federal Rules of Criminal Procedure that has nothing to do with what is going on in state court, and as much as you said several times before you started your argument today, you said this is a state motion, but you didn't file anything under state [law]. I had told you about recharacterizing that to allow me to let you file that, it is *People v. Shellstrom*, but you said you didn't want to do that. So your motion for a new trial based on newly discovered evidence filed under the Federal Rules is denied ***."

¶ 16    The court denied Mr. Pitts's oral motion for reconsideration, and Mr. Pitts appealed.

¶ 17                                    II. JURISDICTION

¶ 18    The circuit court denied Mr. Pitts's motion for a new trial based on newly discovered evidence on January 31, 2020, and Mr. Pitts timely filed his notice of appeal on February 18, 2020. We have jurisdiction under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 651(a) (eff. July 1, 2017), governing appeals from final judgments in postconviction proceedings.

¶ 19                                    III. ANALYSIS

¶ 20    Mr. Pitts argues on appeal that it was improper for the circuit court to deny his request to be unshackled without first holding a hearing and providing an explanation on the record for why such precautions were necessary during the presentation of his *pro se* motion. Relying on *People v. Boose*, 66 Ill. 2d 261 (1977), he contends that this was a violation of his right to due process.

7

Our supreme court held in *Boose* that although the decision to physically restrain a criminal defendant is one within the trial court's discretion, the court should hold a hearing, consider a list of relevant factors, and state for the record the court's reasons. *Id.* at 266-67. The basis for the *Boose* decision was that "shackling of *the accused* should be avoided if possible because: (1) it tends to prejudice the jury against the accused; (2) it restricts his ability to assist his counsel during trial; and (3) it offends the dignity of the judicial process." (Emphasis added.) *Id.* at 265. Here, the State points out that Mr. Pitts has been convicted—not merely accused—of a criminal offense, there was no jury that could have been prejudiced against him in these proceedings, and Mr. Pitts was not represented by counsel.

¶ 21   The State argues that *Boose* does not apply under these circumstances. It notes that in 2010, when our supreme court codified the holding in that case in Rule 430 (eff. July 1, 2010), it made clear that "[t]he determination of whether to impose a physical restraint *shall be limited to trial proceedings in which the defendant's innocence or guilt is to be determined*, and does not apply to bond hearings or other instances where the defendant may be required to appear before the court prior to a trial being commenced." (Emphasis added.) Following the promulgation of that rule, the Fourth District held in *People v. Kelley*, 2013 IL App (4th) 110874, ¶ 26, that *Boose*'s "presumption against shackling" thus "does not apply to postconviction proceedings." The *Kelley* court concluded that "the dignity of the courtroom is not demeaned by a convicted criminal's appearance in shackles when he or she seeks review of his or her trial and/or sentence because the defendant's guilt and sentence have already been determined." *Id.* ¶ 25. See also *People v. Simpson*, 2015 IL App (4th) 140185-U, ¶ 31 (noting that "[w]hether to restrain a defendant at a postconviction hearing is not given the same scrutiny as it is during trial proceedings, where the defendant's guilt or innocence is determined").

¶ 22    Mr. Pitts points out that the Third District has expressed a different view, holding in *People v. Rippatoe*, 408 Ill. App. 3d 1061, 1066-67 (2011), that it was error for a defendant to be shackled throughout the hearing on his posttrial claim of ineffective assistance of counsel because "[e]ven in a posttrial proceeding, where there is no jury, any unnecessary restraint of a defendant is impermissible because it demeans both the defendant and the judicial process." See also *People v. Hawkins*, 2020 IL App (3d) 160682, ¶¶ 12 (in which the State conceded that the shackling of a *pro se* petitioner during second-stage postconviction proceedings was inappropriate).

¶ 23    Future cases will no doubt clarify this area and shed light on whether these authorities can be harmonized. It is unnecessary for us to do so here, however, because we agree with the State that it would simply be futile to grant Mr. Pitts the relief he seeks on appeal. Even where a due process violation has been found, we must still consider whether that violation was harmless. *People v. Williams*, 2013 IL App (1st) 111116, ¶ 93. An error is harmless if it can be shown, beyond a reasonable doubt, that the error did not contribute to the outcome complained of. *Id.*

¶ 24    Nowhere in his brief on appeal does Mr. Pitts, now represented by counsel, ask this court to reverse the circuit court's denial of his motion for a new trial under Federal Rule of Criminal Procedure 33. Instead, he repeatedly states that the relief he seeks is the remandment of this matter "for further proceedings." We fail to see what Mr. Pitts could mean by this, however, other than a new hearing on this motion for a new trial under the federal rules—a motion on which he could not possibly succeed.

¶ 25    The record is clear that Mr. Pitts did not wish for his motion to be recharacterized as a postconviction petition. The motion, as presented, and which relied on a federal rule of procedure that the circuit court had no ability to apply, could not have resulted in the new trial that Mr. Pitts sought. Unlike in *People v. Dixon*, 2019 IL App (1st) 160443, ¶ 57, where this court held that

procedural errors in postconviction proceedings were not harmless merely because the reviewing court questioned the merits of the petition, here Mr. Pitts's motion was fatally defective on its face. Mr. Pitts's counsel acknowledges as much in his reply brief, agreeing that "unless [he] can turn [his motion] into something totally different, it will still lack merit." To remand for a new hearing under these circumstances could make no difference to the outcome. And, as noted above, the contribution of an error to the outcome is the focus of a harmless error analysis.

¶ 26    Mr. Pitts and his counsel urge us to recognize that insult to a litigant's dignity, though it may have no effect on the legal outcome, is its own type of harm, a harm borne not just by the litigant, but by the system as a whole. We wholeheartedly agree that this is true. But we cannot remand, as he suggests, solely "to underscore that point." As a court of review, we reverse an order of the circuit court only where reversable error contributed to the making of that order (*Williams*, 2013 IL App (1st) 111116, ¶ 93), and we remand for further proceedings only where those proceedings have the potential to change the legal result (see *Goral v. Dart*, 2020 IL 125085, ¶ 76 (noting that "reviewing courts ordinarily will not consider issues that are not critical to the disposition of the case presented *or where the result will not be affected regardless of how the issues are decided*" (emphasis added))). Under the circumstances presented here, any procedural error in the way that the trial court conducted the hearing on Mr. Pitts's motion must be viewed as harmless.

¶ 27                            IV. CONCLUSION

¶ 28    Because Mr. Pitts's *pro se* motion, as presented, was fatally defective and could not have resulted in the relief he sought, any due process violation resulting from the circuit court denying his request to be unshackled during the presentation of that motion was harmless error.

¶ 29    Affirmed.

¶ 30    JUSTICE C.A. WALKER, specially concurring:

¶ 31    I concur with the majority's conclusion that any error resulting from the trial court's denial of the request to be unshackled during the posttrial proceeding was harmless error. I write separately to emphasize the significant harm to human dignity caused by shackling. The majority "wholeheartedly agreed" with defendant's assertion that this form of restraint invokes harm to a litigant's dignity that is separate from any harm to the legal outcome. *Supra* ¶ 26. Given the severity of harm, a review of whether error occurred in this case is warranted. Pitts argues that he should have had the right "to turn his own papers with his own hands" as a 47-year-old man who has appeared before the court multiple times and always engaged in appropriate behavior.

¶ 32    Our supreme court in *Boose* held that "the shackling of the accused should be avoided if possible because: (1) it tends to prejudice the jury against the accused; (2) it restricts his ability to assist his counsel during trial; and (3) it offends the dignity of the judicial process." *People v. Boose*, 66 Ill. 2d 261, 265 (1977).

¶ 33    The majority did not consider whether the trial court's denial of Pitts's request to be unshackled constituted error. The State argues that no error occurred because Pitts "has been convicted—not merely accused—of a criminal offense, there was no jury that could have been prejudiced against him in these proceedings, and Mr. Pitts was not represented by counsel." *Supra* ¶ 20. I disagree because shackling inherently offends the dignity of the judicial process where there's no justification for shackles.

¶ 34    Our supreme court held that "the reasons for forbidding shackling are not limited to trials by jury." *In re Staley*, 67 Ill. 2d 33, 37 (1977). The Third District of this court has found that the rationale established in *Staley* extends to posttrial proceedings. See *People v. Rippatoe*, 408 Ill. App. 3d 1061 (2011).

¶ 35    Pitts argues that it was error to be shackled during his posttrial proceeding because it demeans both him and the judicial process. In *Rippatoe*, the defendant was shackled during a hearing on his posttrial claim of ineffective assistance of counsel. *Id.* at 1065. The appellate court held that the trial court erred when it failed to conduct an inquiry as to whether defendant should be shackled during the hearing. *Id.* at 1067. The court reasoned, "Even in a posttrial proceeding, where there is no jury, any unnecessary restraint of a defendant is impermissible because it demeans both the defendant and the judicial process." *Id.* at 1066 (citing *People v. Allen*, 222 Ill. 2d 340, 346 (2006)). The court further held that the trial court's failure constituted second prong plain error because the error impaired the integrity of the judicial process. The court explained:

> "There can be no doubt that shackles impose physical burdens, pains, and restraints that tend to confuse and embarrass a defendant, burden his mental faculties, and thereby materially abridge and prejudicially affect his constitutional rights. [Citation.]
>
> Where a defendant is forced to appear *pro se*, take an oath, testify, question witnesses, and present his arguments to the court all while shackled, without any consideration by the trial judge of the necessity for the shackles, the integrity of the judicial process is greatly demeaned. There can be no doubt that the defendant's ability to act on his own behalf is severely diminished. Moreover, there can be no doubt that the integrity and dignity of the judicial proceedings was demeaned where one of the participants had to conduct himself throughout the hearing while bound hand and feet for no apparent reason and without even an inquiry into a need to be restrained." *Id.* at 1067-68.

¶ 36    I agree with the holding and the reasoning set forth in *Rippatoe*. The reasoning is also in line with the United States Supreme Court's holding that shackling inherently offends the dignity of the judicial process. *Deck v. Missouri*, 544 U.S. 622, 623 (2005) (shackling is "inherently

prejudicial" (internal quotation marks omitted)). The Court explained that shackling "is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Illinois v. Allen*, 397 U.S. 337, 344 (1970); see also *Deck*, 544 U.S. at 631-32. The safeguards surrounding dignity do not end once a defendant is convicted. "Even prisoners retain the essence of human dignity inherent in all persons." *Brown v. Plata*, 563 U.S. 493, 510 (2011).

¶ 37    Furthermore, the effects of shackling on a defendant's ability to assist his counsel carries the same force when considering a defendant's ability to conduct his own defense. The United States Supreme Court not only acknowledged that shackles "can interfere with the accused's 'ability to communicate' with his lawyer," but also "can interfere with a defendant's ability to participate in his own defense, say, by freely choosing whether to take the witness stand on his own behalf." *Deck v. Missouri*, 544 U.S. at 631. As such, the effects are substantially similar, regardless of whether a defendant proceeds with counsel or *pro se*.

¶ 38    Thus, case law demonstrates that a court's consideration as to whether a defendant should be shackled is not limited to jury trials or to defendants who are represented by counsel. Rather, this consideration is also essential in other contexts. For these reasons, I would find that the trial court erred when it failed to consider whether Pitts's shackling was appropriate under the factors set forth by our supreme court in *Boose*. I strongly suggest trial judges throughout this state conduct a *Boose* inquiry as to whether a defendant should be shackled before any court proceeding to minimize the harm to human dignity.