# Illinois Official Reports

## Appellate Court

---

### *People v. Strickland*, 2017 IL App (4th) 150714

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES STRICKLAND, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-15-0714 |
| Filed | December 1, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 13-CF-105; the Hon. John W. Belz, Judge, presiding. |
| Judgment | Vacated and remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Sonthonax B. SaintGermain, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>John C. Milhiser, State's Attorney, of Springfield (Patrick Delfino, David J. Robinson, and Rosario Escalera, Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

| Panel | JUSTICE APPLETON delivered the judgment of the court, with opinion.
Justice Holder White concurred in the judgment and opinion.
Presiding Justice Turner concurred in part and dissented in part, with opinion. |

## OPINION

¶ 1    Defendant, Charles Strickland, appeals from the dismissal of three *pro se* motions, which the trial court recharacterized as, collectively, a postconviction petition. The question in this appeal is whether the court should have given defendant the admonitions in *People v. Shellstrom*, 216 Ill. 2d 45, 57 (2005), before so recharacterizing the motions. Our answer is yes.

¶ 2    Granted, this case is factually different from *Shellstrom* in that the dismissal of defendant's recharacterized motions was in the second stage of the postconviction proceeding instead of in the first stage. See *People v. Harris*, 2013 IL App (1st) 111351, ¶¶ 46-47 (describing the three stages of a postconviction proceeding). Nevertheless, defendant in this case was *pro se* at the time of the recharacterization. The second-stage order of dismissal simultaneously did three things: (1) allowed the appointed counsel to withdraw, (2) recharacterized the three *pro se* motions as a postconviction petition, and (3) dismissed the motions. Because defendant was *pro se* at the time the court first explicitly recharacterized his motions as a postconviction petition, the rationale of *Shellstrom* applies to this case, despite the factual difference. Like the defendant in *Shellstrom*, defendant in this case had no attorney to warn him of the looming danger of procedural forfeiture (see 725 ILCS 5/122-1(f) (West 2016)) when the court did the recharacterization.

¶ 3    Therefore, we vacate the trial court's dismissal of defendant's three *pro se* motions, and we remand this case for the trial court to admonish defendant pursuant to *Shellstrom*, 216 Ill. 2d at 57, and permit him to amend or withdraw his motions if he deems that either course of action would be suitable for him.

¶ 4                    I. BACKGROUND
¶ 5                    A. The Charge
¶ 6    The State charged that, on February 14, 2013, defendant committed the offense of unlawful possession of a weapon by a felon, a violation of section 24-1.1(a) of the Code of Criminal Procedure of 2012 (720 ILCS 5/24-1.1(a) (West 2012)).

¶ 7    The information also alleged that, in *People v. Strickland*, Sangamon County case No. 2001-CF-106, defendant previously was convicted of "a forcible felony, Burglary." This additional allegation was legally significant because, under section 24-1.1(e) (720 ILCS 5/24-1.1(e) (West 2012)), a "[v]iolation of this Section by a person not confined in a penal institution who ha[d] been convicted of a forcible felony" was a Class 2 felony. *Id.* The offense otherwise would have been merely a Class 3 felony. See *id.* A prior conviction of a forcible felony elevated unlawful possession of a weapon by a felon from a Class 3 felony, punishable by imprisonment for no less than 2 years and no more than 10 years, to a Class 2

felony, punishable by imprisonment for no less than 3 years and no more than 14 years. See *id.*

¶ 8                      B. The Negotiated Guilty Plea

¶ 9      On May 1, 2014, defendant entered a negotiated plea of guilty to the charge of unlawful possession of a weapon by a felon. He waived the preparation of a presentence investigation report. That same day, the trial court sentenced him to imprisonment for 7 years minus the 456 days he had spent in presentence custody. The court ordered him to pay a public defender's fee of $200 but imposed no fines.

¶ 10     Defendant never filed a motion to vacate his guilty plea. Nor did he take a direct appeal.

¶ 11                C. Additional Assessments Imposed by the Circuit Clerk

¶ 12     Even though, in its sentence, the trial court imposed no fines (the public defender's fee was a fee, not a fine), the circuit clerk indicated in the court file that defendant owed the following: (1) a violent crime victims' assessment of $100, (2) a probation fund assessment of $10, (3) a drug court assessment of $5, (4) a child advocacy center assessment of $10, (5) a court system assessment of $50, and (6) an Illinois State Police assistance fund assessment of $15.

¶ 13                      D. The First Two *Pro Se* Motions

¶ 14     On August 26, 2014—more than 30 days after sentencing—defendant filed two *pro se* motions, and neither motion cited or mentioned the Post-Conviction Hearing Act (Act) (720 ILCS 5/122-1 *et seq.* (West 2014)).

¶ 15     The first *pro se* motion was titled "Motion To Reduce Sentence Based on Erroneous Elevation of Charges." In this motion, defendant contended that his prior conviction of burglary should not have elevated the present offense, unlawful possession of a weapon by a felon, from a Class 3 felony to a Class 2 felony for two reasons: (1) burglary was not a forcible felony, and (2) he was convicted of the burglary more than 10 years before his conviction of the present offense. He alleged he had informed his appointed defense counsel of this error but that it nevertheless had gone uncorrected.

¶ 16     The second *pro se* motion was titled "Motion To Vacate Judgement, Conviction, and Sentence Based on Unconstitutional Statutes." In this motion, defendant claimed that when representing him in the guilty plea proceedings, his appointed defense counsel was in a conflict of interest and consequently rendered ineffective assistance. Defendant further claimed that, under federal decisions issued before his arrest in this case, the statute defining the offense of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)) was unconstitutional.

¶ 17                      E. The Appointment of New Counsel

¶ 18     On October 1, 2014, the trial court made a docket entry, which stated: "Attorney WILLIAM DAVIS *** is appointed to represent Defendant *** on his post-trial motions, filed August 26, 2014." The docket entry contains no mention of the Act or of a postconviction proceeding.

## F. The State's First Motion for Dismissal

On October 30, 2014, the State filed a "Motion To Dismiss Petition for Post-Conviction Relief." (It is unclear which of the two *pro se* motions the State regarded as a postconviction petition.) The State argued that dismissal of the petition was warranted for five reasons. First, defendant pleaded only conclusions instead of specific facts. Second, he failed to allege a substantial denial of his constitutional rights. Third, he had forfeited his claims by failing to raise them on direct appeal. Fourth, the claims he raised on direct appeal had been fully litigated, and the doctrine of *res judicata* barred them from being relitigated. (Actually, as we have noted, defendant never took a direct appeal.) Fifth, his claims of ineffective assistance were unsupported by the record.

## G. The Third *Pro Se* Motion

On February 3, 2015, while the State's motion for dismissal was still pending, defendant filed a third *pro se* motion, titled "Motion for Order Nunc Pro Tunc." In this motion—in which, again, he neither cited nor mentioned the Act—he claimed he was entitled to credit for 912 days in presentence custody instead of only 456 days. See 730 ILCS 5/5-4.5-100(b), (c) (West 2012). His argument was that he had been well-behaved while in presentence custody and therefore was entitled to day-for-day credit for good conduct. See 730 ILCS 5/3-6-3(a)(2.1) (West 2012).

## H. Davis's Motion To Withdraw

On July 16, 2015, Davis filed a "Motion for Leave to Withdraw as Post-Conviction Counsel Pursuant to *Pennsylvania v. Finley*, [481 U.S. 551 (1987)]." In his motion, Davis evaluated the merits of the three *pro se* motions defendant had filed, referring to each of the motions by the titles defendant had given them. Davis saw no potential merit in any of them. He disagreed that the statute defining the offense of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2012)) was unconstitutional. He pointed out that burglary was indeed a forcible felony and that section 24-1.1(e) (720 ILCS 5/24-1.1(e) (West 2012)) put no time limit on the prior conviction of a predicate felony. Finally, he concluded that 456 days was, indisputably, the correct amount of presentence credit.

Davis also filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013).

## I. The State's Duplicate Motion for Dismissal

On July 21, 2015, the State filed a new motion for dismissal, which repeated the arguments of its previous motion for dismissal. Again, the State argued for the dismissal of "*the Petition* for Post-Conviction Relief," in the singular, without specifying which of the *pro se* motions the State construed as being such a petition. (Emphasis added.)

## J. The Hearing on the Pending Motions

On July 30, 2015, the trial court held a hearing on all pending motions. Defendant participated in the hearing by telephone.

¶ 30　　The trial court told defendant at the beginning of the hearing:

　　"THE COURT: I'm here with Assistant State's Attorney [Sherry] Carey and Attorney Bill Davis. We are here on your motions that have been filed, your post-conviction motion; your motion to reduce sentence based on erroneous elevation of charges, your motion to vacate judgment conviction and sentence based on unconstitutional statutes, and your motion for order nunc pro tunc, which is as to the credit for time served that was assessed in Sangamon County."

(Actually, defendant had filed only three *pro se* motions. There was no fourth *pro se* motion that he called a "post-conviction motion.")

¶ 31　　After hearing arguments by defendant and the assistant state's attorney, the trial court took the matter under advisement.

### K. The Trial Court's Rulings

¶ 33　　In an order entered on August 18, 2015, the trial court did two things. First, the court granted Davis's motion to withdraw from representing defendant. Second, the court ruled as follows:

　　"As Defendant failed to make a substantial showing of any constitutional violation in his Petition, the Court allows the State's Motion to Dismiss Post-Conviction Petition. Defendant's pleadings are hereby DISMISSED.

　　Defendant has a right to appeal this decision. In the case of an appeal from a post-conviction proceeding involving a judgment imposing a sentenced [*sic*] other than death, the appeal is to the Illinois Appellate Court, Fourth District. If Defendant is indigent, he has a right to a transcript of the record of post-conviction proceedings and to the appointment of counsel on appeal, both without cost to him. To preserve the right to appeal, a notice of appeal must be filed in the trial court within 30 days from the date the order was entered."

¶ 34　　This appeal followed.

### II. ANALYSIS

### A. The Lack of Cautionary Admonitions Before Recharacterizing
### Defendant's *Pro Se* Motions as a Postconviction Petition

¶ 37　　Defendant argues that the trial court committed reversible error by recharacterizing his *pro se* motions as, collectively, a postconviction petition without first giving him the admonitions required by *Shellstrom*, 216 Ill. 2d at 57.

¶ 38　　A pleading or motion eligible for such a recharacterization is one that, though alleging constitutional deprivations that are cognizable under the Act, makes no mention of the Act. See *id.* at 53 n.1. It is entirely optional with the trial court whether to recharacterize such a pleading or motion as a postconviction petition. 725 ILCS 5/122-1(d) (West 2016); *People v. Stoffel*, 239 Ill. 2d 314, 324 (2010); *Shellstrom*, 216 Ill. 2d at 53 n.1. If the court does so, however, the *pro se* litigant deserves a fair warning, with an opportunity to withdraw or amend the pleading or motion. As the supreme court held in *Shellstrom*:

　　"[W]hen a circuit court is recharacterizing as a first postconviction petition a pleading that a *pro se* litigant has labeled as a different action cognizable under Illinois law, the circuit court must (1) notify the *pro se* litigant that the court intends to recharacterize

the pleading, (2) warn the litigant that this recharacterization means that any subsequent postconviction petition will be subject to the restrictions on successive postconviction petitions, and (3) provide the litigant an opportunity to withdraw the pleading or to amend it so that it contains all the claims appropriate to a postconviction petition that the litigant believes he or she has. If the court fails to do so, the pleading cannot be considered to have become a postconviction petition for purposes of applying to later pleadings the Act's restrictions on successive postconviction petitions." *Shellstrom*, 216 Ill. 2d at 57.

The supreme court was concerned that if a trial court unilaterally recharacterized a pleading or motion as a postconviction petition, a *pro se* prisoner, uneducated in the complexities of the Act, might not fully understand the legal implications of the recharacterization. Specifically, the prisoner might not understand that, in the future, he or she would have to meet the demanding cause-and-prejudice test to obtain permission to file a successive postconviction petition (see 725 ILCS 5/122-1(f) (West 2016) (the prisoner must "show[ ] cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings," and the prisoner must "show[ ] prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process")). *Shellstrom*, 216 Ill. 2d at 56. The prisoner might not understand it is imperative, on pain of possible procedural forfeiture, to raise all his or her objectively ascertainable constitutional claims in the initial postconviction petition. Or, alternatively, the prisoner might understand the rule of procedural forfeiture but just never intended the pleading or motion to be treated as a postconviction petition. See *id.* The admonitions in *Shellstrom* prevent the prisoner, as a *pro se* litigant, from being unexpectedly plunged into the cause-and-prejudice regime if the court decides to recharacterize the pleading or motion as postconviction petition. See *id.*

¶ 39    Later, in *Stoffel*, the supreme court emphasized that *Shellstrom* admonitions were designed for *pro se* litigants, not represented litigants. *Stoffel*, 239 Ill. 2d at 328. "[W]here *** a defendant's *pro se* petition is not summarily dismissed but is instead advanced for further review, and counsel is appointed to represent the defendant, *Shellstrom* admonitions are unnecessary." *Id.* The supreme court explained:

"The *Shellstrom* admonitions are designed to protect the rights of *pro se* defendants and, in particular, to inform them of the limitation on filing successive postconviction petitions and the need to amend their initial petition to include all possible postconviction claims. [Citation.] But this is precisely the role performed by appointed counsel, who is required to consult with the defendant and make any amendments to the *pro se* petition that are necessary. [Citations.] Thus, *** the concerns raised in *Shellstrom* do not apply when counsel is present [citation], and the absence of admonitions in no way prejudices the defendant." *Id.*

But see *People v. Davis*, 156 Ill. 2d 149, 163 (1993) (a postconviction petitioner is "not entitled to the advocacy of counsel for purposes of exploration, investigation[,] and formulation of potential claims").

¶ 40    The defendant will have no protection at all from being blindsided by the cause-and-prejudice rule if, at the time the trial court recharacterizes his or her pleading or motion as a postconviction petition, the defendant no longer is represented by counsel. In

*Stoffel*, the supreme court agreed with the State that "*Shellstrom* admonitions 'really only apply in the context of a *pro se* petitioner.' " *Stoffel*, 239 Ill. 2d at 328. In the present case, the very order that, for the first time in the proceedings, explicitly recharacterized defendant's motions as a postconviction petition also allowed his appointed counsel to withdraw. Because the recharacterizing order returned defendant to " 'the context of a *pro se* petitioner,' " we extend *Shellstrom* to the circumstances of this case. *Id.* When recharacterizing defendant's motions as a postconviction petition, the trial court should have given him the admonitions in *Shellstrom*, 216 Ill. 2d at 57, since, simultaneously with the recharacterization, the court returned him to *pro se* status.

¶ 41    The dissent disagrees that, in the order of dismissal—or anywhere else in the record—the trial court *explicitly* recharacterized the *pro se* motions as a postconviction petition, but the dissent argues the court *impliedly* did so earlier in the proceedings, beginning with its appointment of Davis. In the order of dismissal, however, the court "allow[ed] the State's Motion to Dismiss Post-Conviction Petition." Surely, by doing so, the court signified its agreement with the State's characterization of what should be dismissed. Also, in the order of dismissal, the court admonished defendant on his rights to "appeal from a post-conviction proceeding" and to receive "a transcript of the record of post-conviction proceedings." These characterizations seem pretty explicit to us.

¶ 42    Looking through the record, we see no earlier recharacterization by the trial court. The dissent strongly disagrees that the recharacterization did not take place until the court granted the motion to withdraw and the motion for dismissal. Very well, then, the dissent should identify where in the record the court earlier stated it would regard the postconviction motions as a postconviction petition. See *In re Marriage of Wolff*, 355 Ill. App. 3d 403, 407 (2005) (explaining the difference between a motion and a petition). A characterization is verbal; it means to describe the character or characteristics of something. To recharacterize the *pro se* motions that defendant filed after ("post") his conviction, the court had to use words that described them as something different from postconviction motions. Until such a recharacterization appeared as an explicit ruling on the record, it did not yet exist.

¶ 43    The dissent argues that by appointing Davis, the court impliedly recharacterized the first two *pro se* motions as a postconviction petition. For two reasons, that argument strikes us as unconvincing. First, it would imply a recharacterization that is at odds with the court's explicit characterization of the *pro se* motions as "post-trial motions." In the docket entry of October 1, 2014, the court appointed Davis "to represent Defendant *** on his post-trial motions." Second, assuming we could reasonably imply a recharacterization that contradicts the court's explicit characterization, we could just as readily imply a recharacterization as a section 2-1401 petition (735 ILCS 5/2-1401 (West 2016)). After all, trial courts have discretion to appoint counsel to represent indigent defendants in section 2-1401 proceedings. *People v. Sweet*, 2017 IL App (3d) 140434, ¶ 44; *People v. Kane*, 2013 IL App (2d) 110594, ¶ 21.

¶ 44    Admittedly, as the dissent points out, *the attorneys* recharacterized the proceedings as postconviction proceedings. The assistant state's attorney filed two "Motion[s] To Dismiss Petition for Post-Conviction Relief," and Davis filed a "Motion for Leave to Withdraw as Post-Conviction Counsel" and a certificate pursuant to Rule 651(c). But Davis filed his motion and certificate on his own behalf, not on defendant's behalf; therefore, his recharacterization in those filings was not attributable to defendant.

¶ 45     More to the point, the only recharacterization that counted for purposes of *Shellstrom* was the recharacterization by the trial court—which did not occur until August 18, 2015, when the court granted Davis permission to withdraw. Until that time, despite any position the attorneys took, recharacterization always was optional with the court. See 725 ILCS 5/122-1(d) (West 2016); *Stoffel*, 239 Ill. 2d at 324; *Shellstrom*, 216 Ill. 2d at 53 n.1. When the court told defendant and the attorneys, on July 30, 2015, that it would take the matter under advisement, the "matter" included the attorneys' position that the *pro se* motions should be recharacterized as a postconviction petition. By taking that position, the attorneys did not deprive the court of its prerogative to decide for itself whether to make the recharacterization. Because none of the *pro se* motions cited the Act or in any manner intimated they were postconviction petitions, the court remained perfectly free to reject the attorneys' proposed recharacterization of the motions as, collectively, a postconviction petition. See 725 ILCS 5/122-1(d) (West 2016) ("A person seeking relief by filing a petition under this Section must specify in the petition or its heading that it is filed under this Section. A trial court that has received a petition complaining of a conviction or sentence that fails to specify in the petition or its heading that it is filed under this Section need not evaluate the petition to determine whether it could otherwise have stated some grounds for relief under this Article."). Until the court agreed, on the record, with the attorneys' proposed recharacterization of the *pro se* motions as a postconviction petition, the cause-and-prejudice rule was irrelevant.

¶ 46     The dissent infers, from the certificate pursuant to Rule 651(c), that Davis proactively advised defendant regarding the cause-and-prejudice rule. We do not see how such an inference could be safely drawn. A certificate pursuant to Rule 651(c) states merely that postconviction counsel "has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). The certificate says nothing about advising defendant regarding the cause-and-prejudice rule, and we are aware of no case imposing such an obligation on postconviction counsel—not even when counsel decides which, if any, amendments should be made to the *pro se* petition. When Rule 651(c) speaks of "ma[king] any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions" (Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013)), the supreme court interprets "petitioner's contentions" as referring only to the contentions already in the *pro se* petition. *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006). In postconviction proceedings, defendants are "not entitled to the advocacy of counsel for purposes of exploration, investigation[,] and formulation of potential claims." *Davis*, 156 Ill. 2d at 163. Because "a 'reasonable' level of assistance" (*Pendleton*, 223 Ill. 2d at 472) means nothing more than investigating, burnishing, and buttressing the claims already in the *pro se* petition (*id.*), it is unclear how the cause-and-prejudice rule necessarily would come up in the interactions between postconviction counsel and the defendant.

¶ 47                              B. Fines Imposed by the Circuit Clerk

¶ 48     A reviewing court may "exercise all or any of the powers of amendment of the trial court." Ill. S. Ct. R. 366(a)(1) (eff. Feb. 1, 1994). If the record contains a clerical error, the trial court may amend the record so as to correct the clerical error and cause the record to

accurately reflect the court's actual decision as memorialized elsewhere in the record. *In re Marriage of Hirsch*, 135 Ill. App. 3d 945, 954 (1985). Such an amendment is called a "*nunc pro tunc* order," and a trial court has authority to enter a *nunc pro tunc* order at any time (*id.*), even after its jurisdiction otherwise has expired (*Bradley v. Burrell*, 97 Ill. App. 3d 979, 981 (1981)). We have this same power to amend the record so as to correct clerical errors. See Ill. S. Ct. R. 366(a)(1) (eff. Feb. 1, 1994).

¶ 49    Defendant argues that the record is in need of amendment because the circuit clerk erroneously indicated in the record that he owes six fines, whereas, actually, the trial court imposed no fines at all in its sentencing order. Although circuit clerks can have statutory authority to impose fees, they never have authority to impose fines; the imposition of a fine is exclusively a judicial act. *People v. Smith*, 2014 IL App (4th) 121118, ¶ 18.

¶ 50    First, the circuit clerk listed an assessment of $50 for "COURT SYSTEMS." See 55 ILCS 5/5-1101(c)(1) (West 2012). The State concedes that this assessment is a fine and that it should be vacated or deleted from the record because the trial court never imposed this fine. See *Smith*, 2014 IL App (4th) 121118, ¶ 54.

¶ 51    Second, the circuit clerk listed an assessment of $10 for "CHILD ADVOCACY." See 55 ILCS 5/5-1101(f-5) (West 2012). The State concedes that because there is no connection between defendant's offense and children's advocacy or juvenile justice, this assessment is a fine, which likewise should be vacated because the trial court never imposed it. See *People v. Jones*, 397 Ill. App. 3d 651, 660-61 (2009).

¶ 52    Third, the circuit clerk listed an assessment of $15 for the Illinois State Police operations assistance fund ("ISP OP ASSISTANCE FUND"). See 705 ILCS 105/27.3a(1.5) (West 2012). The State concedes that this assessment is a fine rather than a fee (see *People v. Millsap*, 2012 IL App (4th) 110668, ¶¶ 30-31) and that, because it is not in the sentence, it should be vacated (see *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 147).

¶ 53    Fourth, the circuit clerk listed an assessment of $5 as a "DRUG COURT FEE." See 55 ILCS 5/5-1101(f) (West 2012). The State concedes that because defendant never participated in drug court in this case, this assessment must be vacated as a void fine, since the circuit clerk, rather than the trial court, imposed it (see *Warren*, 2016 IL App (4th) 120721-B, ¶ 138).

¶ 54    Fifth, the circuit clerk listed an assessment of $100 for the violent crime victims' assistance fund ("VICTIMS ASSIST FUND"). See 725 ILCS 240/10(b) (West 2012). The State concedes that this assessment is a fine and that it should be vacated because, again, the sentence includes no fines. See *Warren*, 2016 IL App (4th) 120721-B, ¶ 142.

¶ 55    Sixth, the circuit clerk listed an assessment of $10 for the probation operations fund ("PROBATION OP FUND"). See 705 ILCS 105/27.3a(1.1) (West 2012). The State concedes that because defendant waived the preparation of a presentence investigation report, this assessment is a fine rather than a compensatory fee (see *People v. Rogers*, 2014 IL App (4th) 121088, ¶ 38) and that because the circuit clerk, rather than the trial court, imposed this fine, it should be vacated.

¶ 56    We agree with the State's concessions regarding those six assessments. Fines imposed by the circuit clerk are void from the start; they are nothing but spurious demands, lacking legal effect. See *People v. Larue*, 2014 IL App (4th) 120595, ¶ 56. Even so, in the interest of having an accurate record, we vacate the six assessments. See Ill. S. Ct. R. 366(a)(1) (eff.

Feb. 1, 1994); *People v. Bradley*, 2017 IL App (4th) 150527, ¶ 25; *Hirsch*, 135 Ill. App. 3d at 954. We further direct the circuit clerk to show this vacatur of record.

¶ 57                                    III. CONCLUSION

¶ 58        For the foregoing reasons, we vacate the trial court's dismissal of defendant's three *pro se* motions, and we remand this case with directions that the trial court admonish defendant pursuant to *Shellstrom*, 216 Ill. 2d at 57, and permit him to amend or withdraw his motions if he deems that either course of action would be suitable for him. We further vacate six assessments and remand with directions to correct the record consistently with this opinion.

¶ 59        Vacated and remanded with directions.

¶ 60        PRESIDING JUSTICE TURNER, concurring in part and dissenting in part:

¶ 61        I respectfully dissent from the portion of the majority's opinion vacating the trial court's dismissal of defendant's three *pro se* motions and remanding the case with directions for the trial court to admonish defendant pursuant to *Shellstrom*.

¶ 62        Contrary to the majority opinion (*supra* ¶ 41), the trial court never explicitly stated it was recharacterizing defendant's *pro se* motions as a postconviction petition in the appellate record. The record does show the trial court implicitly recharacterized defendant's *pro se* motions as a postconviction petition on October 1, 2014, when it appointed counsel to represent defendant on the first two posttrial motions. On October 30, 2014, the State filed a "motion to dismiss petition for post-conviction relief," which it can do at the second stage of the postconviction proceedings. See *Pendleton*, 223 Ill. 2d at 472. In February 2015, defendant filed his third *pro se* posttrial motion. In July 2015, defendant's appointed counsel filed a motion for leave to withdraw as postconviction counsel, citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987), which addresses the assistance of postconviction counsel.

¶ 63        In his motion to withdraw, postconviction counsel asserted that the trial court had jurisdiction over defendant's *pro se* motions under the Act. In doing so, counsel stated that, upon review of the first two *pro se* motions, the court took the stance that the motions served as petitions for postconviction relief under the Act. The motion to withdraw suggests that the court appointed counsel in accordance with section 122-4 of the Act (725 ILCS 5/122-4 (West 2014)). In the motion to withdraw, postconviction counsel addressed all three of defendant's *pro se* motions. Postconviction counsel concluded that, after a careful review of the record, defendant had no meritorious issues to be argued in a postconviction petition. Attached to the motion to withdraw was defendant's counsel's certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013), which only applies to postconviction cases.

¶ 64        At a July 2015 hearing on the pending motions, the trial court commenced the hearing by stating "[w]e are here on your motions that have been filed, your post-conviction motion." The court then allowed defendant's counsel to argue his motion to withdraw and allowed defendant to argue his three motions. Postconviction counsel explained he filed a *Finley* motion because the court had taken the position defendant's *pro se* motions were postconviction petitions. The court did not correct counsel or in any way indicate the motion

was inappropriate or the proceedings were not under the Act. Postconviction counsel then explained why he thought the motions were meritless. The court said nothing about the nature of defendant's *pro se* motions.

¶ 65    In August 2015, the trial court entered a written order, first granting counsel's motion to withdraw. The court then addressed the merits of defendant's various claims and concluded by allowing the State's motion to dismiss the postconviction petition. The court did not make any statements indicating it was considering the motions as a postconviction petition for the first time. Thus, I strongly disagree with the majority's finding that the recharacterization did not take place until the court's order granting defendant's counsel's motion to withdraw and the State's motion to dismiss.

¶ 66    Here, defendant had appointed counsel to represent him on his three *pro se* motions. In *Stoffel*, 239 Ill. 2d at 328, our supreme court stated *Shellstrom* admonitions do not apply when counsel is appointed to represent a defendant. The majority opinion sets forth the supreme court's reasoning for that conclusion. *Supra* ¶ 39. Defendant's counsel filed a Rule 651(c) certificate, in which he stated he had consulted with defendant to ascertain his contentions of deprivation of constitutional rights, reviewed the record of the proceedings, and made any necessary amendments to the postconviction pleadings. Those are the specific reasons the supreme court cited for finding *Shellstrom* admonitions do not apply to defendants represented by counsel. Thus, I find the facts of this case clearly fall under *Stoffel*, which this court must follow. As such, *Shellstrom* does not apply and remand is not warranted.

¶ 67    Last, while I agree with the majority's suggestion *Stoffel*'s basis for not requiring *Shellstrom* admonitions in cases where counsel has been appointed may be analytically questionable, I am troubled by the majority's characterization of the record in this case, apparently as a way to distinguish *Stoffel*.