2018 IL App (4th) 150881

NOS. 4-15-0881, 4-15-0882 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
| Plaintiff-Appellee, | ) Circuit Court of |
| | ) Adams County |
| v. | ) Nos. 11CF648 |
| | ) 12CF175 |
| JOSEPH L. NIFFEN, | ) |
| | ) Honorable |
| Defendant-Appellant. | ) Robert K. Adrian, |
| | ) Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court, with opinion.
Justices DeArmond and Turner concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Joseph L. Niffen, is serving a total of 39½ years' imprisonment for unlawful possession of a methamphetamine precursor (720 ILCS 646⁄20(a)(2)(E) (West 2012)) and anhydrous ammonia (720 ILCS 646/25(a)(1) (West 2010)). He appeals the summary dismissal of his *pro se* petition for postconviction relief (see 725 ILCS 5/122-2.1(a) (West 2014)) and the imposition of fines by the Adams County circuit clerk. We find arguable merit in one of the claims of his petition, and we hold that the clerk-imposed fines are void. Therefore, we reverse the summary dismissal, vacate the clerk-imposed fines, and remand this case for further proceedings.

¶ 2                              I. BACKGROUND

¶ 3       On July 19, 2012, defendant entered a negotiated guilty plea to one count of unlawful possession of a methamphetamine precursor (720 ILCS 646/20(a)(2)(E) (West 2012)) in Adams County case No. 12-CF-175 and one count of unlawful possession of anhydrous ammonia (720 ILCS 646/25(a)(1) (West 2010)) in Adams County case No. 11-CF-648. The trial court sentenced him to consecutive terms of 15 years' imprisonment for the methamphetamine precursor and 24½ years' imprisonment for the anhydrous ammonia.

¶ 4       The written sentencing order also included the following: (1) "Court Costs, VCVA [(Violent Crime Victims Assistance)], and Penalties," with no listed monetary denominations; (2) a "Crime Lab fee of $100.00" in both cases; (3) an "Assessment (per Cannabis/Controlled Substances Act) of $3000/$1000"; (4) $100 for "Meth"; (5) $5 for "Spinal Cord"; and (6) $1325 restitution.

¶ 5       Also, in "Payment Status Information" sheets in both cases, the circuit clerk imposed the following assessments: $50 for "Court," $100 for "Violent Crime," $10 for "Medical Costs," $10 for "Lump Sum Surcharge," $15 for "Child Advocacy Fee," and $5 for "State Police Ops."

¶ 6       Defendant never filed a motion to withdraw his guilty pleas. Nor did he take a direct appeal.

¶ 7       On July 13, 2015, defendant filed a *pro se* petition for postconviction relief. One of his claims was that, on approximately July 26, 2012, he wrote defense counsel a letter requesting that he file a motion to withdraw his guilty pleas. (As we already have noted, no such motion ever was filed.) In a "Sworn Affidavit" attached to his petition, defendant stated:

>           "1. That while housed at the Graham Correctional Center I sent a letter to my retain [*sic*] counsel requesting that he fil[e] a [m]otion to withdraw my plea.

That in the body of my letter I complained about the length of a sentence I had

received[,] telling my [a]ttorney that I would have one foot in the graveyard by

the time I was released from prison. That also I told my [a]ttorney that the factual

basis information was inaccurate and[,] based upon my prior guilty pleas[,] I

thought it would be grounds for withdrawing my plea."

¶ 8     On October 2, 2015, by written order, the trial court summarily dismissed the

postconviction petition. The court reasoned: "The *** issue concerning counsel's failure to file a

timely motion to withdraw the guilty plea is without merit because [defendant] could have filed

the motion *pro se* and been appointed counsel. Further, the motion[,] even if filed[,] would have

been without merit."

¶ 9                    II. ANALYSIS

¶ 10              A. The Three Stages of a Postconviction Proceeding

¶ 11     The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2014))

provides a remedy for defendants who suffered a substantial violation of their constitutional

rights at trial. *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001). In a noncapital case, the Act

contemplates that a postconviction proceeding will advance through as many as three stages to

determine whether such a constitutional violation occurred. *Id.* at 244.

¶ 12     At the first stage, the trial court independently reviews the postconviction petition

and decides, within 90 days after its filing, whether "the petition is frivolous or is patently

without merit." 725 ILCS 5/122-2.1(a)(2) (West 2014). If the court decides that the petition is

frivolous or patently without merit—or, in other words, that it lacks any "arguable basis either in

law or in fact" (*People v. Hodges*, 234 Ill. 2d 1, 17 (2009))—the court will summarily dismiss

the petition in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2014). That is what the court did in the present case.

¶ 13       If, within 90 days after the filing of the petition, the trial court does not summarily dismiss it, the petition will advance to the second stage. Defense counsel will be appointed, if necessary (see 725 ILCS 5/122-4 (West 2014)), and the State will move to dismiss the petition, or else the State will answer it (see *id.* § 122-5). The question at the second stage is "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *Edwards*, 197 Ill. 2d at 246. In answering that question, the trial court takes as true "all well-pleaded facts that are not positively rebutted by the trial record." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). If no showing of a substantial constitutional violation is made, the court dismisses the petition. *Edwards*, 197 Ill. 2d at 246.

¶ 14       Alternatively, if the petition and its attached documentation make a substantial showing of a constitutional violation, the petition will advance to the third stage for an evidentiary hearing. *Id.* At the third stage, the petition and its accompanying documentation no longer are taken to be true. Instead, the court resolves any questions of fact and determines credibility, as in a bench trial. *Pendleton*, 223 Ill. 2d at 473. The defendant bears an evidentiary burden of making a substantial showing of a constitutional violation. *Id.*

¶ 15              B. The First-Stage Issue of Whether Defendant's
                  *Pro Se* Petition Is Frivolous or Patently Without Merit

¶ 16       In his petition for postconviction relief, defendant claimed that defense counsel rendered ineffective assistance by ignoring a letter from him in which he requested defense counsel to file a motion to withdraw his guilty pleas. For two reasons, the trial court concluded that this claim lacked any potential merit. First, defendant "could have filed the motion *pro se* and been appointed counsel." Second, "the motion[,] even if filed[,] would have been without

- 4 -

merit." The State agrees with defendant, and so do we, that those two reasons are inconsistent with *People v. Edwards*, 197 Ill. 2d 239 (2001).

¶ 17    In *Edwards*, the defendant alleged in his *pro se* postconviction petition that, soon after pleading guilty, he requested defense counsel to file an appeal and defense counsel failed to do so. *Id.* at 242. Because it would have been impossible to pursue an appeal without first filing a motion to withdraw the guilty plea (see Ill. S. Ct. R. 604(d) (eff. Aug. 1, 1992)), the petition was construed as additionally criticizing defense counsel for failing to file a motion to withdraw the guilty plea (*Edwards*, 197 Ill. 2d at 242). The trial court summarily dismissed the petition because it stated no *grounds* for withdrawing the guilty plea and, therefore, failed to show that the defendant suffered any prejudice from defense counsel's allegedly deficient performance. *Id.* The supreme court overturned the summary dismissal because no attorney had ever reviewed the plea proceedings for error and it would have been unreasonable to require the *pro se* defendant to perform such a review and provide legal grounds for withdrawing his guilty plea. *Id.* at 257. Until an attorney was appointed, who would "be able to consult with [the] defendant regarding his claim and explore in more detail the factual and legal ramifications of [the] claim," it was premature "to conclude that [the] defendant's claim of ineffective assistance of counsel [was] so completely lacking in substance that it [was] frivolous or patently without merit." *Id.*

¶ 18    If, in *Edwards*, a defendant who accused his defense counsel of ignoring his request to file a motion to withdraw his guilty plea did not have to provide, at the first stage of the postconviction proceeding, any grounds for withdrawing his guilty plea, it must follow that the same defendant, earlier, in the original proceeding, did not have to file a *pro se* motion to withdraw his guilty plea, since such a motion would have had to provide grounds for withdrawing his guilty plea (see Ill. S. Ct. R. 604(d) (eff. Aug. 1, 1992)). Therefore, contrary to

the trial court's rationale in the present case, the fact that defendant never filed a *pro se* motion to withdraw his guilty pleas did not invalidate his claim that defense counsel rendered ineffective assistance by disregarding his request to file a motion to withdraw his guilty pleas.

¶ 19    It would have been, after all, understandable if defendant had relied on defense counsel to comply with his request and had refrained from filing a motion himself, since we prohibit defendants from filing *pro se* motions while they are represented by counsel, except posttrial motions alleging ineffective assistance, and we instruct trial courts to reject such attempts at "hybrid representation." *People v. Stevenson*, 2011 IL App (1st) 093413, ¶ 30. (Presumably, defendant did not intend to ask his defense counsel to argue his own ineffective assistance.) By accepting the trial court's rationale, we would penalize defendant for complying with our own prohibition.

¶ 20    Although, as the State concedes, the trial court's *reasons* for rejecting this claim at the first stage were erroneous, the State reminds us that we should review the summary dismissal *de novo*, without any deference to the court's reasoning, and that, if we can find in the record any valid basis for the summary dismissal, we should affirm it. See *Edwards*, 197 Ill. 2d at 247; *People v. Relwani*, 2018 IL App (3d) 170201, ¶ 20. The State argues the petition deserved to be summarily dismissed for noncompliance with section 122-2 of the Act (725 ILCS 5/122-2 (West 2016)). Section 122-2 required that the petition "have attached thereto affidavits, records, or other evidence supporting its allegations or *** state why the same [were] not attached." *Id.* Although defendant attached to his *pro se* petition an "affidavit," in which he averred that he had sent defense counsel a letter requesting that he file a motion to withdraw his guilty pleas, and although the lack of a notarization on the "affidavit" did not make the petition frivolous or patently without merit (see *People v. Allen*, 2015 IL 113135, ¶ 34), the State

disputes that that the "affidavit" satisfied section 122-2. The State argues that, to satisfy section 122-2, defendant additionally had to attach to his petition a copy of the letter he claimed to have sent to defense counsel or, alternatively, he had to explain why a copy of the letter was not attached. In support of its argument, the State cites *People v. Delton*, 227 Ill. 2d 247 (2008), and *People v. Anderson*, 287 Ill. App. 3d 1023 (1997). Actually, neither of those cases supports the State's argument.

¶ 21 In *Delton*, the defendant was serving a sentence of imprisonment for the aggravated battery of some police officers. *Delton*, 227 Ill. 2d at 249. He claimed, in his *pro se* postconviction petition, that his trial counsel had rendered ineffective assistance by failing to investigate his allegation that the police officers had been harassing him for a long time, thereby causing him, during the traffic stop in question, to reasonably believe he needed to defend himself from physical aggression at their hands. *Id.* at 251. The defendant attached to his petition excerpts from the transcript of his trial—and nothing else. *Id.* at 255-57. He did not attach his own affidavit. *Id.* at 257.The excerpts from the transcript, standing alone, had no tendency to corroborate the allegation, in his *pro se* petition, that he told trial counsel before the trial that the police officers had been harassing him. *Id.* The problem in *Delton* was that the trial transcript was the only thing attached to the defendant's petition and the transcript, by its terms, corroborated nothing. The supreme court never suggested that an affidavit by the defendant, if he had provided one, would have been insufficient corroboration.

¶ 22 The defendant in *Delton* argued to the supreme court that it was readily inferable why his petition lacked corroborative documentation: a subpoena was necessary to obtain police disciplinary records. *Id.* While agreeing that a subpoena was necessary to obtain such records, the supreme court pointed out that this was no excuse for the defendant because he himself was

the one who had made the complaint against the police officers. *Id.* at 257-58. "Because [the defendant] filed the charges, he could easily have supported his petition with a copy of the complaint he filed against [the police officers] *or with the specifics about the filing of that complaint* if, in fact, he had filed one." (Emphasis added.) *Id.* at 258. Thus, according to the supreme court, "the specifics about the filing of that complaint"—meaning, apparently, an affidavit by the defendant setting forth the specifics—would have served just as well as "a copy of the complaint." *Id.*

¶ 23       In *Anderson*, the defendant alleged in his *pro se* postconviction petition that, about three weeks after pleading guilty, he sent his attorney a letter stating he wanted to withdraw his guilty plea and that counsel never replied. *Anderson*, 287 Ill. App. 3d at 1026. "No affidavits or supporting documents were attached to the petition." *Id.* We do not see anywhere in *Anderson* where the First District stated that the corroborative documentation *had* to be a copy of the letter that the defendant allegedly had sent to defense counsel. Rather, the First District stated that the petition "lack[ed] *any* supporting documents, *such as* the alleged letter written by [the] defendant." (Emphases added.) *Id.* at 1032. By observing that "the instant defendant did not attach any *affidavits or* any supporting documents to his petition," the First District seemed to imply that an affidavit by the defendant would have sufficed. (Emphasis added.) *Id.*

¶ 24       In the present case, not only in his petition but also in his affidavit, defendant describes the substance of his letter to defense counsel, and he states he sent the letter to defense counsel and that defense counsel never responded. The State objects that the petition and the affidavit lack an indispensable supporting document: a copy of the letter. But the purpose of supporting documentation pursuant to section 122-2 is to "show[ ] that the verified allegations [of the petition] are capable of objective or independent corroboration." *People v. Collins*, 202

Ill. 2d 59, 67 (2002). A purported copy of the letter would not have served that purpose. It would have been just another writing by defendant, like his petition and his affidavit. A purported copy of the letter would not have been "objective or independent corroboration" that he actually sent the letter and that defense counsel received it. *Id.* Only defense counsel could corroborate that he received the letter. See *People v. Rogers*, 372 Ill. App. 3d 859, 867 (2007) ("Here, it can easily be inferred that [the] defendant could not attach her correspondence to the petition because any correspondence would have been in the possession of her attorney and thus not readily available to [the] defendant."). Therefore, we are unconvinced by the State's argument that the corroboration requirement in section 122-2 justified the first-stage rejection of defendant's claim that defense counsel rendered ineffective assistance by disregarding his request to file a motion to withdraw his guilty pleas.

¶ 25        Because the Act does not permit the partial summary dismissal of a postconviction petition, we need not address defendant's additional claim that defense counsel rendered ineffective assistance by representing him while under a conflict of interest. See *People v. Romero*, 2015 IL App (1st) 140205, ¶ 27 ("If a single claim in a multiple-claim postconviction petition survives the summary dismissal stage ***, then the entire petition must be docketed for second-stage proceedings[,] regardless of the merits of the remaining claims in the petition."); *People v. White*, 2014 IL App (1st) 130007, ¶ 33 ("We have no need to address any of the other claims in the petition because partial summary dismissals are not permitted during the first stage of a postconviction proceeding.").

¶ 26                                C. Fines Imposed by the Circuit Clerk

¶ 27        Defendant complains of fines that the circuit clerk, as distinct from the trial court, imposed upon him. Although a circuit clerk can have statutory authority to impose fees, a circuit

clerk never has authority to impose fines because a circuit clerk is not a judge and imposing fines as part of a sentence is exclusively a judicial act. *People v. Smith*, 2014 IL App (4th) 121118, ¶ 18.

¶ 28        The label that statutory law attaches to an assessment is relevant in determining whether the assessment is a fine or a fee, but the label is not determinative if it conflicts with the purpose of the assessment. *People v. Jones*, 223 Ill. 2d 569, 583 (2006). The purpose of the assessment is determinative: a fine is intended as punishment for the offense, whereas a fee recoups an expense of the prosecution. *Id.* at 582.

¶ 29        Regardless of whether they are labeled as fees, clerk-imposed fines are void from their inception (*People v. Hible*, 2016 IL App (4th) 131096, ¶ 9), and we should vacate them whenever they are brought to our attention, even in a postconviction proceeding (*People v. Gutierrez*, 2012 IL 111590, ¶ 14 ("[A] void order may be attacked at any time or in any court, either directly or collaterally ***."); *People v. Strickland*, 2017 IL App (4th) 150714, ¶ 48 (in a postconviction proceedings, the appellate court has authority to enter a *nunc pro tunc* order correcting clerical errors in the record)).

¶ 30        After the trial court imposed its sentence, the circuit clerk levied several assessments against defendant that the court did not impose and that case law has identified as fines (when they do not recoup an expense of the prosecution). The State concedes, and we accept its concession, that the following clerk-imposed fines should be vacated in both cases: $50 for "Court" (see 55 ILCS 5/5-1101(c) (West 2012); *Smith*, 2014 IL App (4th) 121118, ¶ 54), $10 for "Medical Costs" (see 730 ILCS 125/17 (West 2012); *People v. Larue*, 2014 IL App (4th) 120595, ¶ 57), $10 for "Lump Sum" (see 730 ILCS 5/5-9-1(c) (West 2012); *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 129), $15 for "Child Advocacy Fee" (see 55 ILCS 5/5-1101(f-5)

(West 2012); *People v. Jones*, 397 Ill. App. 3d 651, 660 (2009)), and $5 for "State Police Ops" (see 705 ILCS 105/27.3a(1.5), (5) (West 2012); *People v. Millsap*, 2012 IL App (4th) 110668, ¶ 31).

¶ 31    The only assessment on which the parties disagree is the $100 that the circuit clerk assessed against defendant for the Violent Crime Victims Assistance Fund. See 725 ILCS 240/10 (West 2012). The State does not dispute that this assessment is a fine (see *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 142), but the State argues that, because the trial court, in its written sentencing judgment, ordered defendant to "pay to the [c]ircuit [c]lerk *** VCVA" in an unspecified amount and because "VCVA" obviously stood for "Violent Crime Victims Assistance," the circuit clerk had authority to specify the amount of this fine. In support of its argument, the State cites *People v. Truesdell*, 2017 IL App (3d) 150383.

¶ 32    In *Truesdell*, the trial court, in the sentencing hearing, orally stated that the defendant was to pay a fine under the Violent Crime Victims Assistance Act (725 ILCS 240/10 (West 2006)), but the court never specified the amount of the fine, either in its oral pronouncement of the sentence or in its written sentencing order. *Truesdell*, 2017 IL App (3d) 150383, ¶ 4. Afterward, the circuit clerk assessed the defendant $100 for " 'Violent Crime.' " *Id.* ¶ 5. On appeal from the summary dismissal of his postconviction petition, the defendant requested the appellate court to vacate this fine on the ground that the circuit clerk, rather than the trial court, imposed it. *Id.* ¶ 13. Because the trial court had orally imposed upon defendant a violent crime victims fine in an unspecified amount, the Third District disagreed that the fine was a void, clerk-imposed fine. *Id.* ¶ 16. The Third District reasoned: "The [trial] court having imposed the VCVA fine, the clerk was left only with the nondiscretionary, ministerial task of filling in the correct amount. *** That the circuit clerk later calculated the amount of that fine

does not retroactively undo [the] fact [that the circuit court imposed the fine in the sentencing hearing]." *Id.* ¶¶ 15-16. This reasoning was inconsistent with the decision of the Fourth District in *People v. Smith*, 2014 IL App (4th) 121118, but the Third District declined to follow *Smith*. *Truesdell*, 2017 IL App (3d) 150383, ¶ 14.

¶ 33 In *Smith*, the trial court, in its oral pronouncement of the sentence and also in a docket entry, ordered the defendant to pay an assessment under the Violent Crime Victims Assistance Act, but the court never specified an amount. *Smith*, 2014 IL App (4th) 121118, ¶¶ 7, 9. Afterward, the circuit clerk set the amount at $25. *Id.* ¶ 10. On appeal from the summary dismissal of his postconviction petition, the defendant argued that this fine was clerk-imposed and, therefore, void. *Id.* ¶ 16. We agreed with the defendant and vacated the fine. *Id.* ¶ 63. We explained:

> "Here, although the trial court ordered [the] defendant to pay the Victims Assistance Act assessment, it failed to determine the appropriate amount of the fine. Absent a court order imposing a *specific* fine, it is well established the clerk of a court, as a nonjudicial member of the court, has no power to levy fines. [Citation.] Nothing in the record suggests the trial court reviewed, approved, or intended to incorporate the clerk's calculations or intended to order a $25 Victims Assistance Act fine ***." (Emphasis added.) *Id.*

¶ 34 Not only was the assessment of $25 unauthorized by the trial court in *Smith*, but it also was the incorrect amount under the Violent Crime Victims Assistance Act. *Id.* ¶¶ 64-65. Therefore, in addition to vacating the assessment of $25, we remanded the case with directions that the trial court impose a fine in the correct amount. *Id.* ¶¶ 65, 94.

¶ 35    The States urges us to follow *Truesdell* instead of *Smith* because, after we decided *Smith*, the supreme court decided *People v. Castleberry*, 2015 IL 116916, which abolished the void sentence rule (*id.* § ¶ 1). Actually, the void sentence rule and the voidness of clerk-imposed fines are two different concepts that have nothing to do with one another. The void sentence rule (abolished by *Castleberry*) provided that if a trial court imposed a sentence that failed to conform to a statutory requirement, the sentence was void. *Id.* The supreme court abolished the void sentence rule because, in criminal cases, circuit courts received their subject-matter jurisdiction from the Illinois Constitution and, thus, their noncompliance with statutory law did not make their judgments void for lack of jurisdiction. *Id.* ¶ 18. The defunct void *sentence* rule is irrelevant because circuit clerks do not *sentence* defendants. Only a court can impose a sentence. *People v. Jackson*, 2013 IL App (3d) 120205, ¶ 45. A fine imposed by a circuit clerk, a nonjudicial member of the court (*id.*), is not a sentence; it is merely a spurious demand (*Strickland*, 2017 IL App (4th) 150714, ¶ 56). The problem with a clerk-imposed fine is not that it is a sentence inconsistent with statutory law; the problem is that it is not a sentence at all. Fines imposed by a circuit clerk are still void despite *Castleberry*'s elimination of the void sentence rule. *Hible*, 2016 IL App (4th) 131096, ¶¶ 10-11; *People v. Daily*, 2016 IL App (4th) 150588, ¶ 29.

¶ 36    Therefore, nothing in *Castleberry* disturbs our holding in *Smith* that, "[a]bsent a court order imposing a *specific* fine, *** the clerk of a court, as a nonjudicial member of the court, has no power to levy fines." (Emphasis added.) *Smith*, 2014 IL App (4th) 121118, ¶ 63. That holding is firmly rooted in case law. See *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 89 (by ordering the defendant to " 'pay all fines, fees, and costs as authorized by statute,' " the trial court impermissibly "delegated its power to impose a sentence to the circuit clerk"); *People v. Isaacson*, 409 Ill. App. 3d 1079, 1085-86 (2011) (the conditional-discharge order "erroneously

abdicated *** to the circuit clerk" the task of determining the amounts of fines, including the fine under the Violent Crime Victims Assistance Act (725 ILCS 240/10 (West 2008)), and consequently those fines were vacated). Also, *Smith* gives effect to the ordinary meaning of "fine." A "fine" is "a *sum* imposed as punishment for an offense." (Emphasis added.) Merriam-Webster's Collegiate Dictionary 436 (10th ed. 2000). Or, as another dictionary says, it is "a *sum* of money exacted as a penalty by a court of law or other authority." (Emphasis added.) New Oxford American Dictionary 634 (2001). Unless the trial court imposed such a sum, it did not impose a fine.

¶ 37        If the trial court neglects to impose a fine—a punitive sum—in the sentencing hearing, we cannot remand the case with directions to remedy the oversight. In that respect, *Castleberry* does change the outcome in *Smith*. The supreme court stated in *Castleberry*: "[T]he appellate court may not, under our rules, address a request by the State to increase a criminal sentence which is illegally low ***." *Castleberry*, 2015 IL 116916, ¶ 26. If the sentence is illegally low, the State's sole appellate remedy is to petition the supreme court for a writ of *mandamus*. *Id.* ¶¶ 26-27; *People v. Wade*, 2016 IL App (3d) 150417, ¶ 11. But see also 730 ILCS 5/5-4.5-50(d) (West 2016) ("The court may not increase a sentence once it is imposed."). Accordingly, we vacate the assessment of $100 for the Violent Crime Victims Assistance Fund, and we refrain from remanding this case for the imposition of this fine.

¶ 38                          D. The Balance of the Bail Money

¶ 39        Because the clerk-imposed fines are void, defendant contends that he should receive back more of his bond money. He requests that we "order a bond money refund totaling $1,901."

¶ 40       Adjudicating the correct disposition of defendant's bond money is beyond the scope of this appeal. According to the notice of appeal, he appeals the summary dismissal of his postconviction petition. Our task, then, is to review the summary dismissal. How much bond money he should be refunded is irrelevant to the question of whether his postconviction petition deserved to be summarily dismissed.

¶ 41       Granted, the clerk-imposed fines are equally irrelevant to that question, but we address the clerk-imposed fines only because case law specifically requires us to do so. See *People v. Burnett*, 2016 IL App (3d) 140837, ¶ 11 (citing *People v. Thompson*, 209 Ill. 2d 19, 27 (2004)). We are unaware of any case holding that bond-money issues, like clerk-imposed fines, can be raised at any time and in any proceeding, regardless of whether the proceeding is direct or collateral. We lack jurisdiction to order the circuit clerk to refund bond money to defendant. See *People v. Smith*, 228 Ill. 2d 95, 104 (2008) ("Illinois courts have held that a notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts thereof specified in the notice of appeal.").

¶ 42                     III. CONCLUSION

¶ 43       For the foregoing reasons, we reverse the trial court's judgment, and we remand this case for further proceedings consistent with this order. Also, we vacate the following fines that the circuit court imposed in both cases: the court assessment of $50, the violent crime assessment of $100, the medical cost assessment of $10, the lump-sum surcharge assessment of $10, the child advocacy assessment of $15, and the State Police operations assessment of $5.

¶ 44       Reversed and remanded in part and vacated in part.