NOTICE
Decision filed 11/15/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180571-U

NO. 5-18-0571

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Lawrence County. |
| | ) | |
| v. | ) | No. 18-CF-88 |
| | ) | |
| DAVID F. WAGNER, | ) | Honorable |
| | ) | Robert M. Hopkins, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1 *Held*: In a criminal trial on a charge of aggravated criminal sexual abuse, the admission of evidence of the defendant's prior arrest and incarceration for possession of methamphetamine did not result in prejudicial error and the admission of evidence of the defendant's drug use at the time of the offense did not result in plain error or the denial of the defendant's right to effective assistance of counsel.

¶ 2 A jury convicted the defendant, David F. Wagner, of aggravated criminal sexual abuse of his adopted daughter, and the circuit court sentenced the defendant to six years in the Illinois Department of Corrections. In a direct appeal from his conviction and sentence, the defendant argues that the admission of evidence at his trial that he used methamphetamine and THC and evidence that he had been incarcerated for an unrelated

1

drug crime resulted in plain error and the denial of his constitutional right to effective assistance of counsel. For the following reasons, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4    In 2012, the defendant adopted his wife's daughter. On May 7, 2017, the wife walked into the Lawrenceville police station and reported that the defendant had sexually abused the daughter. On May 25, 2017, and on September 15, 2017, the daughter submitted to forensic interviews and gave consistent details of the abuse during each separate interview. The daughter reported that the abuse began when she was in the fifth grade and ended in February 2016 when she was in the eighth grade.

¶ 5    The abuse ended in February 2016 when the defendant was arrested for possession of methamphetamine. He ultimately served a prison sentence in the Illinois Department of Corrections for this drug offense. He was released from prison in October 2017 and resided in a halfway house until January 2018. He then moved to Indiana for a period of time. The Lawrenceville chief of police, James White, attempted to question the defendant about the daughter's abuse allegations on several occasions after the defendant was released from prison, but Officer White was unable to question the defendant until June 27, 2018, when the defendant agreed to be interviewed. Officer White and an investigator with the Illinois Department of Children and Family Services (DCFS), Jessie Gray, conducted the interview.

¶ 6    During the interview, Officer White informed the defendant of the daughter's allegations without providing the defendant with any of the details that the daughter reported. According to Officer White, the defendant did not deny sexually abusing the

2

daughter but instead "advised that he was on [methamphetamine and THC] at the time and that if she said it happened, it probably happened." Upon further questioning, the defendant admitted to sexually abusing the daughter three to four times a week and provided Officer White with the same details that the daughter had reported. The defendant explained to Officer White that after his wife left for work, he would ask the daughter to come to his bedroom and ask her to get undressed and get in bed with him. The defendant said that he would then take off his shorts and have the daughter "place her hands on his penis and begin to masturbate." He would also occasionally touch her vagina and her breasts and kiss her.

¶ 7    The defendant told Officer White that this abuse began when the daughter was in the fifth grade and that he abused her because he himself had been sexually abused at a young age. The defendant admitted to instructing the daughter not to tell anyone because he would get in trouble. He told Officer White that he was sorry. According to Officer White, the defendant's confession was consistent with the details of the abuse that the daughter had reported during her two forensic interviews. At the conclusion of the defendant's interview, the defendant handwrote a confession that read as follows:

"I am very sorry for doing the things to my daughter ***, and I'm sorry putting her through that. And I'm sorry to the rest of the family because I had it done to me. My father molested. I did not penetrate her like I was and am truly sorry. The only thing I did touch her on her vagina."

¶ 8    On July 2, 2018, the State charged the defendant with aggravated criminal sexual abuse in violation of section 11-1.60(b) of the Criminal Code of 2012 (720 ILCS 5/11-

3

1.60(b) (West 2018)). The State alleged that the defendant was the adoptive father of the victim who was under 18 years of age when the defendant "knowingly touched the vaginal area" of the victim for purposes of his sexual arousal.

¶ 9 Prior to the defendant's jury trial, the defendant filed a motion *in limine* requesting the circuit court to exclude the admission of evidence that he had a prior drug conviction. The conviction was for possession of methamphetamine. In the motion, the defendant argued that the prejudicial effect of the conviction outweighed its probative value. At the hearing on the motion, the defense emphasized that the defendant's conviction of possession of methamphetamine was not relevant to the defendant's credibility. See *People v. Montgomery*, 47 Ill. 2d 510, 514 (1971).

¶ 10 In response, the State told the circuit court that it did not intend on presenting any evidence specifically about the defendant's methamphetamine conviction. However, the State continued, it anticipated that the defendant's arrest and incarceration for the methamphetamine offense would come up during the trial because the arrest and incarceration were part of the timeline of the events relevant to the sexual abuse offense and that the arrest would come up during both Officer White's and the daughter's testimony. The State argued that the probative value of this evidence outweighed any prejudicial effect that knowledge of the arrest and incarceration might have on the jury.

¶ 11 Although not included in the defendant's motion *in limine*, the State also discussed its intent to offer evidence of the defendant's drug use when the abuse occurred, explaining as follows:

4

"There's also testimony, I expect, of [the defendant] talking about methamphetamine use with the officer during the period which these allegations were made. *** I can't see how it doesn't come up or the jury can infer that, at least, when we're discussing statements he made about using methamphetamine that may go to motive or state of mind."

In response, the defense asked that the circuit court not allow the admission of evidence of the prior conviction without first addressing its relevancy in light of the other evidence admitted at that point in the trial. The circuit court denied the defendant's motion *in limine*, ruling as follows: "Well, at this point, the Court will deny the Motion in Limine as to the prior conviction for methamphetamine. The Court finds that the *** probative value outweighs the prejudicial effect and the Court will permit it to be brought into evidence."

¶ 12     Four witnesses testified at the defendant's trial: Officer White, the daughter, the defendant, and Gray. Gray testified only as a rebuttal witness.

¶ 13     During Officer White's testimony, the prosecution elicited testimony from the officer about the victim's mother walking into the police station and reporting the sexual abuse. The State then presented testimony about Officer White's attempts to contact the defendant after learning of the reported abuse. During direct examination, the prosecutor asked Officer White whether the officer immediately contacted the defendant after learning of the abuse. Officer White responded that he "couldn't at that time because [the defendant] was at Department of Corrections." Officer White explained to the jury that the first time he was able to speak with the defendant was "shortly after [the defendant] got out and was paroled." Officer White explained that he saw the defendant when the defendant "stopped

5

by the jail for something" and the officer told the defendant that he needed to speak with him. According to Officer White, the defendant said he would come by the next day but did not do so. Officer White then testified that he later saw the defendant again when the defendant was at the courthouse for some unspecified reason, and the officer again told the defendant that he needed to talk to him. Officer White eventually interviewed the defendant on June 27, 2018, when the defendant voluntarily came to the police station for questioning. Officer White then told the jury about the interview and the defendant's confession described above.

¶ 14 Officer White testified that, during the interview, the defendant admitted that the last incident of abuse occurred "the day before he got arrested for the first time, which I think was February of maybe '16." The officer explained to the jury that he did not reveal to the defendant any of the details of the abuse as reported by the daughter and that the defendant's version of events "pretty much lined up" with the daughter's statement of what happened. Officer White also denied helping the defendant fill in any part of the defendant's written statement or telling the defendant what to say or write. According to Officer White, the defendant was left alone in the interrogation room while the defendant handwrote his statement.

¶ 15 The daughter, who was 16 years old at the time of the trial, testified that the defendant was married to her mother and that the defendant had adopted her in 2012. She had lived with the defendant since she was three years old, and the defendant had been a father to her for as long as she could remember. In explaining the abuse to the jury, the daughter testified that the defendant would wake her up after her mother had left for work,

6

and she would go into the defendant's bedroom and give him a "hand job," touching his penis with her hands to ejaculation before she got ready for school. She testified that the defendant also rubbed her vaginal area. She explained that this occurred every morning and that it became routine.

¶ 16    The daughter estimated that she was in the fifth grade when the abuse started and in the eighth grade the last time it occurred. She was 14 years old when the abuse ended. The prosecutor asked the daughter how she remembered when the abuse stopped, and she answered, "Because he had gone to jail." She told the jury that she never told anyone when the abuse was happening because she was scared, and she did not know how to say that she did not like what was happening. The first time she mentioned the abuse to anyone was in May 2017 after the defendant was sent to prison. She testified that the defendant got out of prison in October 2017, and she had not spoken with him since his release.

¶ 17    The defendant testified at the trial in his own defense and denied abusing his daughter. He testified that when Officer White interviewed him, he initially denied the allegations because he "didn't do it." However, according to the defendant, Officer White and the DCFS investigator kept "pressing" him, called him a liar, and got mad. The defendant told the jury that he wanted to "just get out of that room" and, therefore, he admitted to the abuse and told Officer White and the investigator what they wanted to hear. With respect to his written statement, the defendant admitted that the statement was in his handwriting and that he signed it. He testified, however, that Officer White and the investigator told him what to write and that 75% of the statement was their words, not his own. He told the jury that he wrote what they told him to write and that they had to tell him

7

how to spell some of the words. He claimed that he did not understand what he wrote because he had "these cleanses" and loses "memory of it." He testified that he voluntarily added the part about him being sexually abused himself when he was younger.

¶ 18    The defendant testified that he had a good relationship with his daughter and that nothing sexual ever occurred between them. He denied ever touching his daughter sexually and denied that she ever touched him sexually. During direct examination, the defense attorney asked the defendant why he had spent time in prison, and the defendant answered, "Possession of meth under five grams." The defense attorney then asked the defendant whether he heard from the daughter while in prison, and the defendant testified that he talked to his daughter and son every night while in prison, telling them good night and that he missed them and loved them.

¶ 19    During cross-examination, the prosecutor asked the defendant to tell the jury exactly what he told Officer White during the interview, and the defendant answered, "I told him I was under the influence of methamphetamine when all this supposedly happened." The defendant also testified during cross-examination that he used methamphetamine for about six months to a year, and that he was using about a quarter gram of methamphetamine every day when he was arrested for possession of methamphetamine. The defendant denied being unable to remember events due to his drug use at the time the abuse occurred. Also during cross-examination, the prosecutor asked the defendant whether he met with Officer White at any point after he was released from prison prior to the June 27, 2018, interview. The defendant testified that he did not meet with Officer White at first because he was in a halfway house and later he could not find a ride to meet with the officer.

¶ 20    For the State's rebuttal, the DCFS investigator, Gray, testified about the interview of the defendant in June 2018 at the Lawrenceville police station. Gray testified that no one got mad or yelled at the defendant during the interview and that the defendant was not pressured to say anything. Gray testified that neither she nor Officer White helped the defendant write the defendant's statement. According to Gray, both she and Officer White were out of the room when the defendant wrote his statement.

¶ 21    At the conclusion of the trial, the jury found the defendant guilty of aggravated criminal sexual abuse, and the circuit court sentenced the defendant to a term of six years in the Illinois Department of Corrections followed by a two-year term of mandatory supervised release. The defendant now appeals from the circuit court's judgment. The defendant argues that he was denied a fair trial due to the admission of testimony about his prior conviction and prison sentence for possession of methamphetamine and the admission of testimony about his methamphetamine and THC use at the time of the abuse.

¶ 22                                    II. ANALYSIS

¶ 23                    1. Evidence of the Defendant's Prior Conviction of
                              Possession of Methamphetamine

¶ 24    The defendant argues that the circuit court erred in allowing the admission of evidence that he had a prior conviction for possession of methamphetamine. Although the defendant did not object to this testimony during the trial, prior to trial, the defendant filed a motion *in limine* seeking an order excluding testimony about this prior conviction. The circuit court denied the motion *in limine*, and the defendant raised this issue in his posttrial motion, arguing that the circuit court erred in denying the motion *in limine*. In a criminal

9

case, "a defendant preserves an issue for review by (1) raising it in either a motion *in limine* or a contemporaneous trial objection, and (2) including it in the posttrial motion." *People v. Denson*, 2014 IL 116231, ¶ 11. Here, even though he did not offer a contemporaneous objection at trial, the defendant has nonetheless preserved this claimed error for review by raising the issue in a motion *in limine* and again in his posttrial motion.

¶ 25    As the State notes in its brief, the defendant first focuses his argument on whether use of the prior conviction was proper impeachment evidence under the standards set out in *People v. Montgomery*, 47 Ill. 2d 510, 514 (1971), and its progeny. We agree with the State that this argument is misplaced because the State did not impeach the defendant with his prior possession of methamphetamine conviction but instead offered this other crimes evidence for purposes of establishing the timeline of the abuse and explaining the timeline of Officer White's investigation of the reported abuse. Accordingly, we need not determine whether the prior conviction was proper impeachment evidence under *Montgomery* standards because the evidence was not admitted for that purpose.

¶ 26    "[W]here the defendant has made a timely objection and properly preserved an error for review, the reviewing court conducts a harmless-error analysis in which the State has the burden of persuasion with respect to prejudice." *People v. McLaurin*, 235 Ill. 2d 478, 495 (2009). In harmless-error analysis, the State must prove beyond a reasonable doubt that the jury verdict would have been the same absent the error. *People v. Herron*, 215 Ill. 2d 167, 181 (2005).

¶ 27    Turning to the admission of other crimes evidence for purposes other than a *Montgomery* impeachment, Illinois courts have held that evidence of other crimes, wrongs,

10

or acts by the defendant is inadmissible if the evidence is offered solely to establish the defendant's propensity to commit an offense. *People v. Gumila*, 2012 IL App (2d) 110761, ¶ 37. Courts generally prohibit the admission of other crimes evidence because the jury should not convict a defendant on the basis that he is a bad person deserving punishment; instead, guilt or innocence should be evaluated solely based on the evidence relevant to the charged crime. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003).

¶ 28 However, evidence of other crimes is admissible for other purposes including to show knowledge, intent, absence of mistake or accident, and the absence of an innocent mind frame or the presence of criminal intent. *Id.*; see also Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Evidence of other crimes must tend to make the existence of a fact that is of consequence in the case more probable or less probable than it would be without the evidence. *People v. Boyd*, 366 Ill. App. 3d 84, 90 (2006); Ill. R. Evid. 401 (eff. Jan. 1, 2011). Also, evidence of other crimes must not become the focal point of the trial. *Boyd*, 366 Ill. App. 3d at 94. Like other evidentiary matters, whether to admit other crimes evidence lies within the sound discretion of the circuit court. *Gumila*, 2012 IL App (2d) 110761, ¶ 37.

¶ 29 In the present case, in the State's case-in-chief, the State presented testimony that informed the jury of the defendant's arrest and incarceration for an unspecified crime. The State presented this evidence through the testimony of Officer White and the daughter. Specifically, in explaining the period between learning of the reported abuse and the eventual interview of the defendant, Officer White told the jury about the defendant being incarcerated in the Department of Corrections for an undisclosed offense which prevented

11

the officer from interviewing the defendant immediately after learning of the abuse. Similarly, during the daughter's testimony, the daughter told the jury that the defendant's abuse ended when he was arrested for an undisclosed crime. The State offered this testimony from the daughter as a basis for explaining to the jury when and why the defendant's abuse ended and in explaining how the daughter could remember exactly when the abuse ended.

¶ 30    On appeal, the defendant argues that the prejudicial effect of this evidence outweighed its probative value. However, based on our review of the record, we conclude that even if the evidence of the defendant's methamphetamine conviction was improperly admitted, the error was harmless beyond a reasonable doubt.

¶ 31    The "improper introduction of other-crimes evidence is harmless error when a defendant is neither prejudiced nor denied a fair trial based upon its admission." *People v. Nieves*, 193 Ill. 2d 513, 530 (2000). In addition, Illinois courts have explained that "[a]n error in admitting other-crimes evidence is harmless *if there is substantial evidence of the defendant's guilt.*" (Emphasis added.) *People v. Sims*, 2019 IL App (3d) 170417, ¶ 30 (citing *Nieves*, 193 Ill. 2d at 530-31); see also *People v. Murdock*, 259 Ill. App. 3d 1014, 1021 (1994) ("Notwithstanding the fact that the court allowed the State to use the other crimes evidence for a purpose for which it was not proper, reversal of defendant's conviction on this ground is not required in light of his failure to establish any prejudice resulting therefrom. Here, even ignoring the improper other crimes evidence, the State introduced substantial evidence of defendant's guilt.").

¶ 32    In the present case, the evidence presented at the trial included testimony from Officer White about the daughter's two forensic interviews during which the daughter provided consistent details of the abuse. The evidence also included the daughter's testimony at the trial detailing the abuse for the jury and evidence of the defendant's confession in which the defendant corroborated the details of the abuse that the daughter reported. Officer White explained to the jury that he did not reveal to the defendant any of the details of the abuse as reported by the daughter prior to his interview of the defendant, and yet the defendant's confession included the same details of the abuse that the daughter conveyed during her forensic interviews and at trial. The defendant confessed to the abuse both verbally and in writing, and Officer White testified that the defendant was not coerced or pressured into making any verbal and written statements and that no one told the defendant what to say or write in confessing to the abuse. Officer White's testimony was corroborated by the testimony of Gray who also participated in the defendant's interview. Gray confirmed that the defendant was not coerced into confessing and that no one told the defendant what to say or write.

¶ 33    Accordingly, the present case was not merely a credibility contest based only on the daughter's and the defendant's testimony. Instead, the daughter's testimony was corroborated by the details of the defendant's own confession. In addition, the defense did not offer any evidence to establish a motive for the daughter to falsely report the abuse. Under these facts, the unchallenged evidence establishing the defendant's guilt was substantial and compelling despite the defendant's testimony at the trial that he did not abuse his daughter.

13

¶ 34　Our supreme court has held that although the erroneous admission of other crimes evidence ordinarily calls for reversal, the evidence "must have been a material factor in [the defendant's] conviction such that without the evidence the verdict likely would have been different." *People v. Cortes*, 181 Ill. 2d 249, 285 (1998). "If the error is unlikely to have influenced the jury, admission will not warrant reversal." *Id.* at 285-86 (holding that the admission of other crimes evidence was "harmless beyond a reasonable doubt" where the verdict would not have been different without the other crimes evidence; therefore, the defendant was not prejudiced and was not denied a fair trial).

¶ 35　In the present case, for the reasons we have explained, the State presented substantial evidence of the defendant's guilt such that the admission of Officer White's and the daughter's testimony about the defendant's arrest and incarceration was harmless beyond a reasonable doubt. Accordingly, we reject the defendant's argument that the admission of other crimes evidence during Officer White's and the daughter's testimony constituted reversible error.

¶ 36　In addition to Officer White's and the daughter's testimony, the defendant's attorney also elicited testimony from the defendant himself about his incarceration for the methamphetamine offense. With respect to this testimony, the defendant argues that his attorney was constitutionally ineffective in presenting this evidence to the jury.

¶ 37　Criminal defendants have a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984); U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. A defendant is denied effective assistance where (1) his counsel's performance fell below an objective standard of reasonableness and (2) absent counsel's

14

deficient performance, there is a reasonable probability that the outcome of the trial would have been different. *Strickland*, 466 U.S. at 684-85. The court need not consider the deficiency prong where the defendant fails to establish prejudice under the second prong of the *Strickland* standard. *Id*. at 697.

¶ 38    As noted above, in the present case, Officer White's and the daughter's testimony referenced the defendant's arrest and incarceration for an undisclosed crime. During direct examination, the defendant's attorney had the defendant clarify to the jury the specific crime for which the defendant was arrested and incarcerated, and the defendant told the jury that it was for possession of methamphetamine under five grams. The defense attorney also elicited testimony from the defendant that the defendant talked to his daughter every night while in prison, telling her good night and that he missed her and loved her. The prosecution did not reference the defendant's arrest and incarceration for the possession of methamphetamine offense at any time during its closing arguments.

¶ 39    Based on our analysis of the entire record of the trial as outlined above, we again conclude that there is no reasonable probability that the outcome of the defendant's trial would have been different had the defendant's attorney not elicited this testimony from the defendant. The defendant's voluntary confession to Officer White independently corroborated the details of the abuse that were reported by the daughter. This evidence was overwhelming. As a result, the defendant's ineffective assistance of counsel argument fails under the prejudice prong of the *Strickland* standard. See *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998) (holding that a "lack of prejudice renders irrelevant the issue of counsel's performance"); *People v. Johnson*, 128 Ill. 2d 253, 271 (1989) (applying the two-

15

part *Strickland* standard and, without deciding the first prong, concluding that in light of the overwhelming evidence the defendant suffered no prejudice from the claimed errors); *People v. Page*, 155 Ill. 2d 232, 266-67 (1993) (the defendant could not meet the prejudice prong of the *Strickland* test in light of the overwhelming evidence against the defendant).

¶ 40                          2. Evidence of the Defendant's Drug Use

¶ 41    The defendant also argues that reversible error occurred due to the admission of evidence that he was using methamphetamine and THC when the abuse occurred. Again, this claimed error involves evidence of other crimes which, as noted above, is not admissible for purposes of establishing the defendant's propensity to commit an offense but is admissible for other purposes including to show knowledge, intent, absence of mistake or accident, and absence of an innocent mind frame or the presence of criminal intent. *Gumila*, 2012 IL App (2d) 110761, ¶ 37.

¶ 42    With respect to this claimed error, the defendant's motion *in limine* did not ask the circuit court to exclude evidence of uncharged drug crimes; the defendant asked only that evidence of his prior conviction be excluded. In addition, the defendant did not object at trial to the admission of testimony about his drug usage, and the claimed error was not included in the defendant's posttrial motion. Accordingly, the defendant has forfeited this claimed error. The defendant acknowledges this forfeiture but asks us to review this claimed error under the plain-error rule.

¶ 43    The plain-error rule allows a reviewing court to review a forfeited error affecting substantial rights under one of two alternative prongs: (1) the evidence is so closely balanced that the conviction may have resulted from the error and not the evidence, or

(2) the error is so serious that the defendant was denied a substantial right and a review of the forfeited error preserves the integrity of the judicial process. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). Under both prongs the defendant has the burden of persuasion. *People v. Reese*, 2017 IL 120011, ¶ 69. If the defendant fails to carry his burden, the procedural default must be honored. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). On appeal, the defendant raises both prongs of the plain-error rule.

¶ 44                    (a) First Prong of the Plain-Error Rule

¶ 45    Under the first prong of the plain-error rule, "[w]hat makes an error prejudicial is the fact that it occurred in a close case where its impact on the result was potentially dispositive." *People v. Sebby*, 2017 IL 119445, ¶ 68. "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *Id*. ¶ 53. This inquiry "involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id.*

¶ 46    Our supreme court has held that the prejudice prong for ineffective assistance of counsel is similar to the closely balanced evidence first prong of plain-error review. *People v. White*, 2011 IL 109689, ¶ 134. This is true because "[b]oth analyses are evidence-dependent and result-oriented." *Id*. Therefore, "where a defendant fails to show prejudice, a defendant's allegations of ineffective assistance of counsel and plain error under the closely-balanced-evidence prong both fail." *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 47 (citing *White*, 2011 IL 109689, ¶ 134).

17

¶ 47 Here, because we have concluded above that the evidence of the defendant's guilt was not closely balanced, the defendant has failed to establish plain error under the first prong of the plain-error rule. See, *e.g.*, *People v. Holt*, 2019 IL App (3d) 160504-B, ¶ 47 ("Because we have determined that [the defendant] failed to meet his burden under the first prong of the plain-error inquiry—and thus that the evidence was not closely balanced—we hold that [the defendant] cannot satisfy the prejudice prong of the *Strickland* inquiry.").

¶ 48                        (b) Second Prong of the Plain-Error Rule

¶ 49 The defendant also argues that plain error occurred under the second prong of the plain-error rule. "Our supreme court has equated the second prong of the plain error test with structural error such that automatic reversal is only warranted when the error renders a defendant's trial fundamentally unfair or unreliable." *People v. Jackson*, 2013 IL App (3d) 120205, ¶ 25 The United States Supreme Court has recognized an error as structural error only in a very limited class of errors including: a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction. *People v. Thompson*, 238 Ill. 2d 598, 609 (2010). With respect to errors that render the trial fundamentally unfair or challenge the integrity of the judicial process, the courts presume the existence of prejudice, regardless of the strength of the evidence, because of the importance of the rights involved. *Herron*, 215 Ill. 2d at 187.

¶ 50 In arguing the second prong of the plain-error rule, the defendant challenges the admission of other crimes evidence and challenges the circuit court's failure to instruct the jury on the limited purpose for which such evidence could be considered. See Illinois

Pattern Jury Instructions, Criminal, No. 3.14 (approved Oct. 17, 2014). However, these claimed errors do not fall within the categories of structural error recognized by our supreme court. "[A]utomatic reversal [under the second plain-error prong] is only required where an error is deemed 'structural.' " *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009).

¶ 51   While Illinois courts have held that, under certain circumstances, the improper admission of other crimes evidence can rise to the level necessary to invoke the second prong of the plain-error rule (see *People v. Jackson*, 2017 IL App (1st) 142879, ¶ 70), there are no reported cases establishing that, in all circumstances, this type of error constitutes structural error resulting in an automatic reversal regardless of the strength of the evidence. See *People v. Strawbridge*, 404 Ill. App. 3d 460, 469 (2010) (holding that because "an error concerning the admission of other-crimes evidence may be deemed harmless in appropriate circumstances, we cannot say that such an error is so fundamental that it necessarily satisfies the second prong of the plain-error doctrine").

¶ 52   Likewise, with respect to the circuit court's failure to instruct the jury on the limited purpose of the other crimes evidence, Illinois courts have held that the failure to give a limiting instruction concerning the use of other crimes evidence does not necessarily rise to the level of plain error. *People v. Tolbert*, 323 Ill. App. 3d 793, 800 (2001); *People v. Hooker*, 253 Ill. App. 3d 1075, 1085 (1993). Generally, the only instructions necessary to ensure a fair trial include the elements of the crime charged, the presumption of innocence, and the question of burden of proof. *People v. Turner*, 128 Ill. 2d 540, 562-63 (1989). "Where the defendant claims second-prong plain error, a reviewing court must decide

whether the defendant has shown that the error was so serious it affected the fairness of the trial and challenged the integrity of the judicial process." *Sebby*, 2017 IL 119445, ¶ 50.

¶ 53    Here, upon review of the entire record of the trial as outlined above, we conclude that the admission of other crimes evidence as well as a lack of a limiting instruction were not so substantial that they affected the fairness of the trial or challenged the integrity of the process. We are confident that the exclusion of the other crimes evidence or the giving of a limiting instruction would not have swayed the jury toward an acquittal. The jury would have convicted the defendant with, or without, the other crimes evidence and with, or without, a limiting instruction. Accordingly, the defendant's claim of plain error fails under both prongs of the plain-error rule.

¶ 54                                    III. CONCLUSION

¶ 55    For the foregoing reasons, we affirm the circuit court's judgment.


¶ 56    Affirmed.